*In re* Jovino Martínez Ramírez, querellado.

*Número:* CP-95-7          *Resuelto:* 27 de enero de 1997

*Carlos Lugo Fiol, Procurador General,* y *Cynthia Iglesias Quiñones, Procuradora General Auxiliar; Salvador Ramírez Seda, Harry N. Padilla Martínez* y *Edwin Toro Goyco,* abogados del querellado; *Agustín Mangual Hernández, Comisionado Especial.*

PER CURIAM:

## I

De un estudio minucioso del expediente y de los autos en su totalidad se desprenden los hechos que a continuación relatamos. Este caso se origina en un litigio entre los esposos Esteban Rosas González y Eligia Rodríguez Lebrón (en adelante los demandantes) y los esposos Nelson Acosta Pagán y Alma Figueroa Mercado (en adelante los

demandados), Caso Núm. CD-79-0259 sobre cobro de dinero. Dicho litigio culminó en un juicio en su fondo ante el entonces Tribunal Superior, el cual dictó sentencia el 20 de enero de 1989.

El 15 de septiembre de 1973, los demandantes vendieron a los demandados una finca de 8.2371 cuerdas en el Barrio Jaquitas de Hormigueros. El precio de venta fue de cuarenta y siete mil dólares ($47,000), pagaderos en el término de cinco (5) años, con intereses al ocho por ciento (8%) anual. Este fue el primero de varios negocios entre las partes.

Por iniciativa de los demandantes, las partes comparecieron ante el abogado notario Jovino Martínez Ramírez para el otorgamiento de la escritura de compraventa. Los demandantes habían utilizado previamente al licenciado Martínez como notario en el otorgamiento de varias escrituras,(1) habiéndole conocido en 1969 a través de un familiar de éste.

Con relación al negocio de compraventa entre los demandantes y los demandados, las partes otorgaron la Escritura Núm. 279 de "Segregación, Venta e Hipoteca" ante el licenciado Martínez Ramírez el 15 de septiembre de 1973. Mediante dicha escritura se constituyó una hipoteca voluntaria con el rango de primera a favor de los vendedores sobre una propiedad inmueble en Hormigueros. La hipoteca constituida por las partes garantizaba el pago del precio aplazado de cuarenta y siete mil dólares ($47,000), más sus intereses y una cantidad para costas y honorarios de abogado.

---

(1) El Lcdo. Jovino Martínez había actuado como notario en el otorgamiento de una escritura relacionada con una venta de una finca en el Barrio Jaquitas realizada por los demandantes Esteban Rosas González y Eligia Rodríguez Lebron a Robert Smith en 1969. En 1970 los demandantes otorgaron una escritura ante el licenciado Martínez relacionada con una porción de terreno transferido a un señor de apellido McDonald o a la entidad corporativa que le empleaba. En 1971 el licenciado Martínez actuó como notario con relación a una escritura otorgada por la hija de los demandantes, Zoraida Rosas Rodríguez, y el esposo de ésta, yerno de los demandantes, Juan Celso Irizarry. En 1972 los demandantes comparecieron ante el licenciado Martínez para cancelar un pagaré hipotecario endosado por terceros.

El mismo día del otorgamiento de la Escritura Núm. 279, y en virtud de un préstamo, los compradores demandados suscribieron ante el licenciado Martínez Ramírez un pagaré a favor de los demandantes por la suma de veinticinco mil dólares ($25,000), con fecha de vencimiento a 15 de septiembre de 1975 e intereses al ocho por ciento (8%) anual. Este pagaré contenía una cláusula que establecía que la deuda sería satisfecha mediante el pago de dos mil quinientos dólares ($2,500) por cada solar que se segregara y vendiera de la finca adquirida por los compradores. Además, indicaba que por cada solar segregado y vendido los vendedores otorgarían la correspondiente escritura de liberación.

Al otorgarse la Escritura Núm. 279, las partes confiaron al licenciado Martínez Ramírez todos los aspectos relacionados con el perfeccionamiento de la compraventa, incluso su inscripción en el Registro de la Propiedad. A esos efectos, el licenciado Martínez Ramírez asignó la presentación en el Registro de la Propiedad al Sr. Pedro P. Osorio.

La referida escritura fue presentada al Registro de la Propiedad para su inscripción por el señor Osorio el 19 de septiembre de 1973, inscribiéndose la compraventa en el Folio 25 del Tomo 81 de Hormigueros, Finca 2517. Por razones desconocidas, no se inscribió la hipoteca,[2] expresándose en este sentido en la certificación registral expedida el 25 de septiembre de 1985 que de dicha hipoteca "no se solicita inscripción". En el Registro de la Propiedad permaneció únicamente la mención de ésta. Aparentemente, ninguna de las partes ni el licenciado Martínez Ramírez se percataron de este hecho. El licenciado Martínez Ramírez tampoco hizo gestiones para verificar si se había inscrito la hipoteca.

Posteriormente, el 21 de febrero de 1974, en virtud de

---

[2] El asiento de presentación sólo hacía referencia a la compra de la propiedad. El mismo indicaba que se cancelaban los sellos por la cantidad de setenta dólares con cincuenta centavos ($70.50) y cero punto cincuenta centavos (0.50).

un préstamo adicional por la suma de diez mil dólares ($10,000) que les adelantaran los demandantes, los demandados suscribieron ante el licenciado Martínez Ramírez un pagaré al portador por la suma de diez mil dólares ($10,000). En garantía de este nuevo préstamo, los deudores constituyeron a favor de los acreedores una hipoteca con rango de segunda, afectando la finca de 8.2371 cuerdas en el Barrio Jaquitas, según la Escritura Núm. 68 de "Hipoteca en Garantía de Pagaré Hipotecario" otorgada el 21 de febrero de 1974 ante el licenciado Martínez Ramírez. La Escritura Núm. 68 expresamente hacía referecia al gravamen hipotecario por la suma de cuarenta y siete mil dólares ($47,000) que afectaba la finca en virtud de la compraventa de 15 de septiembre de 1973, hecho indicativo de que las partes desconocían que la primera hipoteca no había sido inscrita y que, por lo tanto, no había quedado constituida. La segunda hipoteca fue debidamente presentada e inscrita en el Registro de la Propiedad, convirtiéndose *de facto* en gravamen con rango de primera.

A partir de 11 de mayo de 1974, y hasta el 24 de mayo de 1976, las partes, en unión a terceros adquirentes de solares, comparecieron al otorgamiento de trece (13) escrituras de segregación, compraventa y liberación. Todas estas escrituras se otorgaron ante el licenciado Martínez Ramírez y hacían referencia al gravamen hipotecario por la suma de cuarenta y siete mil dólares ($47,000). Entre estas escrituras, las Núms. 161, 195, 196 y 231 liberaban once (11) solares, y en ellas se expresaba que los vendedores recibían dos mil dólares ($2,000) por cada solar para "abonar mil dólares ($1,000)" a cada hipoteca, o sea, la primera hipoteca creada en virtud de la Escritura Núm. 279 y la hipoteca con rango de segunda creada en virtud de la Escritura Núm. 68. De este modo, al liberarse los primeros diez (10) solares para el 29 de junio de 1974, se satisfizo la deuda de diez mil dólares ($10,000) garantizada por la segunda hi-

poteca, la única que constaba inscrita, por lo que la propiedad quedó libre de gravámenes.

En el otorgamiento de las escrituras, el licenciado Martínez Ramírez actuó en su capacidad de notario público, cobrando los honorarios que estipula la ley, los cuales fueron satisfechos por los demandados. Durante este período, el licenciado Martínez Ramírez también brindó asesoramiento de carácter financiero a los demandantes en su capacidad de contador, y prestó otros servicios de índole personal.

Durante este período, además, el licenciado Martínez Ramírez actuaba como abogado de los demandados con relación a varias gestiones de cobro de dinero. Adicionalmente, el licenciado Martínez Ramírez efectuaba abonos a la deuda de los demandantes en representación y por instrucciones de los demandados. En virtud de dichos pagos, llegaron a saldarse los préstamos de diez mil dólares ($10,000) y de veinticinco mil dólares ($25,000), quedando así pendiente el balance de la deuda original de cuarenta y siete mil dólares ($47,000), más sus intereses.

La última escritura de segregación, compraventa y liberación otorgada ante el licenciado Martínez Ramírez fue la Escritura Núm. 140 de 29 de mayo de 1976. En este documento el notario otorgante requirió la comparecencia de testigos instrumentales debido a que se percató de que Esteban Rosas González estaba ciego. Según el testimonio del licenciado Martínez Ramírez, él se percató de la condición del señor Rosas González cuando, al llevarle una escritura a la casa para su firma, lo observó levantarse de una silla y chocar contra la pared. En la vista ante el foro de instancia el licenciado Martínez Ramírez testificó que antes de este momento no se había dado cuenta de que el señor Rosas González hubiera estado ciego. El perito de la parte demandante, el oftalmólogo Dr. Carlos Romaguera, testificó ante el foro de instancia que, según los récord médicos del

demandante Esteban Rosas González, éste padecía de glaucoma desde por lo menos 1968. El doctor Romaguera explicó que dicha condición consiste en niveles anormales de presión sobre el ojo ocasionados por la pobre eliminación de líquido, resultando en una disminución del campo de visión que se va agravando con el tiempo. El codemandante tenía dicha condición en ambos ojos. A preguntas del tribunal, el doctor Romaguera explicó que de intentar leer un documento por el ojo izquierdo —único con algún tipo de visión— la falta de visión periferal en el codemandante significa que para la fecha del juicio (septiembre de 1988) sólo podría lograrlo observando el documento letra por letra.

Según mencionado, en la última escritura que otorgaran los demandantes ante el aquí querellado —la Escritura Núm. 140 de 29 de mayo de 1976— éste requirió la presencia de dos (2) testigos instrumentales. Los testigos utilizados fueron los Srs. José Elías Rodríguez Lebrón y Elías Rodríguez, hermano y sobrino, respectivamente, de la otorgante Eligia Rodríguez Lebrón. Aparentemente molestos por que se les había requerido unos testigos en el otorgamiento de la Escritura Núm. 140, los demandantes no volvieron a utilizar al licenciado Martínez Ramírez como notario. La última escritura de segregación y liberación relacionada con la finca del Barrio Jaquitas (Escritura Núm. 31) fue otorgada por las partes ante otro notario, Lcdo. Carlos Vargas Muñiz, el 30 de agosto de 1977.

Posteriormente, los demandados se atrasaron en el pago de su deuda con los demandantes. Luego de varias negociaciones, el demandado Nelson Acosta Pagán reconoció deber la suma de cincuenta y ocho mil novecientos treintiún doláres con cincuenta y ocho centavos ($58,931.58) al día 28 de enero de 1977. No obstante, ante el incumplimiento posterior de la obligación, los demandantes presentaron demanda en cobro de dinero el 15 de enero de 1979.

El 3 de mayo de 1979 los demandados presentaron una solicitud de quiebras ante el Tribunal de Quiebras de Estados Unidos bajo el Capítulo XI de la legislación de quiebras, 11 U.S.C. sec. 1101 *et seq.* En vista de ello, los procedimientos ante el foro de instancia fueron paralizados mediante Orden de 18 de julio de 1979.

En sus escritos ante el Tribunal de Quiebras los demandados informaron que los demandantes eran acreedores asegurados por la cantidad de cuarenta y siete mil dólares ($47,000), evidentemente bajo la creencia equivocada que la hipoteca constituida por la Escritura Núm. 279 de 15 de septiembre de 1973 había sido inscrita en el Registro de la Propiedad. También se informaba como acreedor al licenciado Martínez Ramírez en la cantidad de cinco mil dólares ($5,000) por concepto de honorarios de abogado (*legal fees and counseling*).

El 8 de agosto de 1979 los demandados sometieron el plan de reorganización que dispone la ley ante el Tribunal de Quiebras. Dicho plan fue confirmado por el Tribunal de Quiebras el 22 de febrero de 1980, cerrándose el caso el 24 de marzo de 1980. Toda vez que como los demandantes no eran realmente acreedores asegurados, debido a que la hipoteca no estaba inscrita, la decisión del Tribunal de Quiebras tenía el efecto de exonerar la deuda.

Aproximadamente cuatro (4) años después, en octubre de 1984, los demandantes contrataron a una nueva representación legal. Como resultado de las gestiones de sus nuevos abogados, los demandantes se enteraron, por primera vez, de que la hipoteca constituida por la Escritura Núm. 279 no había sido inscrita. Esto le fue comunicado al licenciado Martínez Ramírez, quien se había hecho responsable de dicha gestión de inscripción. Acto seguido, la nueva representación legal de los demandantes presentó una moción ante el Foro de Quiebras en la que solicitó la reapertura del caso ante dicho tribunal el 24 de noviembre

de 1984. Además, presentó ante el foro de instancia una Moción Solicitando la Continuación de los Procedimientos y Autorización para Enmendar la Demanda con el propósito de incluir como codemandado al licenciado Martínez Ramírez. Por su parte, en un intento por corregir su error, el licenciado Martínez Ramírez presentó y obtuvo finalmente la inscripción de la hipoteca en virtud de la Escritura Núm. 279 ante el Registro de la Propiedad el 5 de enero de 1985, presentando para ello una copia de la escritura en la que certificaba falsamente que la misma había sido expedida a nombre del demandante Esteban Rosas González.

La solicitud de reapertura presentada por los demandantes fue denegada por el Tribunal de Quiebras el 6 de diciembre de 1984, decisión que fue confirmada por el Tribunal de Distrito Federal el 1ro de abril de 1986, al concluir dicho foro que los demandantes habían incurrido en incuria. El 10 de septiembre de 1985 el foro de instancia declaró con lugar la solicitud de continuación de los procedimientos y autorizó la enmienda a la demanda. El 22 de octubre de 1985 los demandantes presentaron una Demanda Enmendada, en la cual se añadió al licenciado Martínez Ramírez como codemandado en una acción en daños y perjuicios por impericia profesional.

El 20 de enero de 1989 el foro de instancia dictó la sentencia antes referida, en la cual declaró sin lugar la reclamación contra el aquí querellado. Concluyó que la misma estaba prescrita, pues se trataba de un incumplimiento de obligaciones inherentes al notariado y ya había expirado el plazo para una acción por responsabilidad extracontractual. Inconformes con dicho dictamen, los demandantes acudieron en revisión ante nos.

El 3 de diciembre de 1993 emitimos una opinión en *Rosas González v. Acosta Pagán*, 134 D.P.R. 720 (1993), en la cual revocamos al foro de instancia al resolver que la acción no estaba prescrita, por tratarse de la responsabilidad

contractual del notario quien se había obligado a presentar una escritura de segregación, venta e hipoteca de inmueble al Registro de la Propiedad. Devolvimos el caso al foro de instancia para la continuación de los procedimientos.

El 5 de mayo de 1994 el foro de instancia le impuso al aquí querellado una responsabilidad subsidiaria a la de los demandados hasta el monto de la equidad del inmueble objeto del caso. El foro de instancia también dispuso que la ejecución exitosa de la propiedad extinguiría la responsabilidad del codemandado Martínez Ramírez, independientemente de que el valor real de la propiedad resultara insuficiente para cubrir el balance actual de la deuda.[3] Inconforme, el aquí querellado acudió ante nos solicitando revisión, la cual denegamos cuando concluimos que "[l]a sentencia recurrida es, esencialmente, correcta. La responsabilidad del notario en el presente caso resulta ser evidente". *Rosa González v. Acosta Pagán*, Caso Núm. RE-94-293, Resolución de 22 de julio de 1994. Oportunamente, el aquí querellado solicitó una reconsideración, la cual también fue denegada.

A la luz de los acontecimientos reseñados, le ordenamos al Procurador General que sometiera ante nos un informe sobre la conducta del Lcdo. Jovino Martínez Ramírez. Examinado el informe rendido, le ordenamos al Procurador General que presentara la querella correspondiente. El 1ro de agosto de 1995 éste presentó la querella, a la cual el querellado sometió su contestación ante nos oportunamente. El 20 de octubre de 1995 nombramos a un Comisionado Especial para que presidiera una vista en la cual oyese y recibiese la prueba para que luego presentara un informe con sus conclusiones de hecho.

El 26 de diciembre de 1995 se llevó a cabo una Conferencia con Antelación a la Vista. Como resultado de la misma, el Procurador General nos sometió una querella

---

[3] El 29 de diciembre de 1995 dicha propiedad fue ejecutada y se le adjudicó a la parte demandante.

enmendada, a la cual el querellado respondió. La vista se llevó a cabo el 18 y el 21 de marzo de 1996. El 7 de junio de 1996 el Comisionado Especial rindió su informe. Finalmente, el 19 de septiembre de 1996 el querellado solicitó que autorizáramos la transcripción de los testimonios de varios testigos ofrecidos por el querellado, al igual que el suyo propio, para hacerlos formar parte del expediente ante nos. El 15 de octubre de 1996 denegamos dicha solicitud por la misma haber sido tardía. Pasemos, pues, a analizar los cargos sometidos contra el querellado.

## II

### [PRIMER CARGO]

El Lcdo. Jovino Martínez incurrió en conducta profesional en violación al Canon 18 de los de Etica Profesional[,] 4 L.P.R.A. Ap. IX, C. 18[,] al no cumplir con la obligación que contrajo con los otorgantes de procurar y lograr el acceso registral en su totalidad de la escritura número 279 de Segregación, Venta e Hipoteca del 15 de septiembre de 1973 perteneciente a su obra notarial. La hipoteca quedó sin inscribirse como tal. No fue hasta el 8 de enero de 1985 que el querellado presentó en el Registro de la Propiedad la hipoteca a favor de Esteban Rosas González.

█ En lo pertinente, el Canon 18 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX, establece lo siguiente:

Será impropio de un abogado asumir una representación profesional cuando está consciente de que no puede rendir una labor idónea competente y que no puede prepararse adecuadamente sin que ello apareje gastos o demoras irrazonables a su cliente o a la administración de la justicia.

Es deber del abogado defender los intereses del cliente diligentemente, desplegando en cada caso su más profundo saber y habilidad y actuando en aquella forma que la profesión jurídica en general estima adecuada y responsable.

En relación con esta obligación, hemos dicho que "[e]l ejercicio de la práctica de la profesión de abogado requiere en todo momento celo, cuidado y prudencia". *In re Rodrí-*

*guez Torres*, 104 D.P.R. 758, 765 (1976). Véase *In re Siverio Orta*, 117 D.P.R. 14, 18 (1986).

En el presente caso, en su capacidad como abogado notario, el querellado asumió la gestión profesional encomendada de inscribir en el Registro de la Propiedad la Escritura Núm. 279 en cuestión. Esta gestión fue delegada por el querellado al Sr. Pedro Osorio, quien llevó a cabo la presentación para la inscripción de la referida escritura. No obstante, en relación con dicha escritura, sólo se inscribió la compraventa y se omitió inscribir la hipoteca. Por lo tanto, la hipoteca contenida en dicha escritura no quedó constituida hasta el 5 de enero de 1985, cuando el querellado finalmente tramitó su inscripción. Era deber del querellado asegurarse que la gestión que él delegó al señor Osorio se hubiese cumplido a cabalidad. Al no hacerlo, el querellado incurrió en una falta de diligencia para con sus clientes, causándole daños a éstos y violando así los deberes impuestos por el Canon 18 del Código de Ética Profesional, *supra*.

[SEGUNDO CARGO]

El licenciado Martínez Ramírez violó la Sección 15 de la Ley Notarial vigente al momento de autorizar la escritura Número 140 del 2 de mayo de 1976, es decir la Ley Número 99 de 27 de junio de 1956, 4 L.P.R.A. sección 1015, al utilizar como testigos instrumentales a dos parientes de los otorgantes que se encuentran dentro de los grados que proh[í]be la sección.

La Sec. 15 de la Ley Notarial de 1956 (4 L.P.R.A. sec. 1015 (ed. 1965)), equivalente al Art. 22 de la actual Ley Notarial de Puerto Rico, Ley Núm. 75 de 2 de julio de 1987 (4 L.P.R.A. sec. 2040), disponía que:

Cuando de acuerdo con ... este título se requieran o permitan testigos para el otorgamiento de una escritura o documento público, habrá unidad de acto, y no podrán ser testigos los que no sepan firmar, los empleados o criados del notario autorizante, ni los parientes del notario o de las partes interesadas, dentro del cuarto grado de consanguinidad o segundo de afinidad.

342

■ Más adelante, la Sec. 20 de la misma ley, 4 L.P.R.A. sec. 1020 (ed. 1965), equivalente al Art. 34 de la actual Ley Notarial de Puerto Rico, 4 L.P.R.A. sec. 2052, establecía que serían nulos los instrumentos públicos para los cuales se hayan usado testigos que tuviesen cualquiera de las limitaciones antes citadas. De hecho, "[s]e trata de causa de nulidad absoluta que derrumba la totalidad del instrumento público. Es doctrina histórica que rige desde hace más de cincuenta (50) años, y que está plenamente justificada, considerada la importancia y razón de ser de la función del testigo instrumental en los casos de excepción en que la Ley los requiere". S. Torres Peralta, *El Derecho Notarial Puertorriqueño*, San Juan, Pubs. STP, 1995, pág. 10.14. Véase *Viqueira v. Registrador*, 43 D.P.R. 34 (1932).

■ En el caso ante nos, el querellado, en su gestión profesional como notario autorizante de la Escritura Núm. 140 antes mencionada, utilizó como testigos instrumentales a un hermano y a un sobrino de la otorgante Eligia Rodríguez Lebrón. Estos testigos eran parientes dentro del segundo y tercer grado de consaguinidad, respectivamente, de la señora Rodríguez Lebrón.[4] Por lo tanto, el querellado incurrió en conducta impropia en su gestión notarial al violar una prohibición impuesta por la Sec. 15 de la entonces vigente Ley Notarial, *supra*. Esto causó la nulidad de la Escritura Núm. 140 antes mencionada como instrumento público. Además, el querellado incumplió su deber como custodio de la fe pública, ya que al autorizar la escritura en cuestión, dio fe de que ésta cumplía con todos los requisitos exigidos por ley.[5]

[4] Resulta inexcusable que el querellado no haya indagado adecuadamente la posibilidad de un vínculo consanguíneo entre la otorgante Rodríguez Lebrón y los testigos, en vista de que uno de los testigos utilizados tenía los mismos apellidos que la otorgante y el otro testigo tenía el mismo primer apellido.

[5] El requisito de la dación de fe pública lo establecía la Sec. 17 de la entonces vigente Ley Notarial, equivalente al Art. 15 de la ley actual, 4 L.P.R.A. sec. 2033. Ambas disposiciones establecen varios requisitos de redacción y contenido para las escrituras públicas. Al interpretar dicho requisito, hemos dicho lo siguiente:

[TERCER CARGO]

El licenciado Jovino Martínez Ramírez violó la sección 25 de la Ley Notarial vigente al 5 de enero de 1985, fecha de la solicitud de inscripción por el querellado de la hipoteca constitu[i]da mediante la escritura número 279 (autorizada el 15 de septiembre de 1973), Ley Núm. 99 del 27 de junio de 9156[sic], 4 L.P.R.A. sec. 1025.

■  La sección de referencia, equivalente al Art. 43 de la actual Ley Notarial de Puerto Rico, 4 L.P.R.A. sec. 2065, disponía en lo pertinente que:

Las partes, sus causantes y causahabientes en la materia del contrato, y cualquier persona que aparezca interesada en el mismo, podrán solicitar y obtener del notario las oportunas copias certificadas de las escrituras matrices. Cualquier otra persona podrá también obtener copia certificada de un documento notarial, mediante petición justificada ante el Tribunal Superior, que a su razonable discreción podrá librar una orden a ese efecto.

En el caso de autos, el querellado admite que expidió una copia certificada a nombre del Sr. Esteban Rosas González, parte con interés, para poder inscribir la hipoteca en cuestión en el Registro de la Propiedad. Lo cierto es que dicha copia no fue expedida a solicitud del señor Rosas González, como consignó al margen de la escritura matriz bajo dación de fe. Lo correcto era que el querellado se hubiese comunicado con el abogado del señor Rosas González[6] para exponerle la situación de que, para fines de la inscripción, era necesario que el señor Rosas González solicitara que se le expidiera una copia certificada de la Escritura Núm. 279, como parte interesada. Una vez obtenida la petición del señor Rosas González, el querellado

---

"El notario ejerce una función clave de inestimable importancia en los negocios jurídicos. Es custodio de la fe pública. Al autorizar un documento presuntivamente da fe pública y asegura que ese documento cumple con todas las formalidades de ley, formal y sustantivamente, que el documento es legal y verdadero, y que se trata de una transacción válida y legítima." *In re Feliciano Ruiz*, 117 D.P.R. 269, 275 (1986).

[6] A la fecha de la expedición de dicha copia certificada, el Sr. Esteban Rosas González había demandado al querellado por impericia profesional en el Caso Núm. CS-79-259.

podía entonces proceder a expedir la copia para fines de inscripción. Otra alternativa era el que el querellado hubiese presentado una petición ante el entonces Tribunal Superior para que dicho foro librara la orden que autorizara la expedición de dicha copia certificada, a los efectos de la inscripción de dicha escritura por el querellado en el Registro de la Propiedad.

■ El querellado no realizó ninguna de las gestiones antes mencionadas. En vez, procedió a expedir dicha copia certificada motu proprio, expresando falsamente que lo hacía a solicitud del señor Rosas González. Al así actuar, incurrió en violación no tan sólo de lo dispuesto por la Ley Notarial, sino también del deber de actuar con honradez y sinceridad en todo momento impuesto por el Canon 35 del Código de Ética Profesional.([7]) También violó el Canon 38 de dicho Código, el cual en lo pertinente, establece que "[e]l abogado deberá esforzarse, al máximo de su capacidad, en la exaltación del honor y dignidad de su profesión, aunque el así hacerlo conlleve sacrificios personales y debe evitar hasta la apariencia de conducta profesional impropia". 4 L.P.R.A. Ap. IX.

[CUARTO CARGO]
El querellado incurrió en conducta profesional en violación al Canon 21 de [É]tica Profesional[,] 4 L.P.R.A. Ap. IX C. 21, al asumir la representación profesional de los codemandados Nelson Acosta Pagán y Alma Figueroa Mercado en el caso que contra éstos instaron Don Esteban Rosas González y Doña Eligia Rodríguez Lebrón por motivo del incumplimiento de los primeros con los términos de la Escritura Núm. 279 de "Segregación, Venta e Hipoteca" que ante el abogado querellado otorgaron las partes mencionadas el 15 de septiembre de 1973, por iniciativa de los esposos Rosas González-Rodríguez Lebrón.

■ En lo pertinente, el Canon 21 del Código de Ética Profesional, *supra*, establece lo siguiente:

---

([7]) 4 L.P.R.A. Ap. IX.

No es propio de un profesional el representar intereses encontrados. Dentro del significado de. esta regla, un abogado representa intereses encontrados cuando, en beneficio de un cliente, es su deber abogar por aquello a que debe oponerse en cumplimiento de sus obligaciones para con otro cliente.

Dichos intereses encontrados pueden ocurrir "en relación a la representación dual en forma concurrente o sucesiva de clientes del mismo abogado ...". Torres Peralta, *op. cit.*, pág. 4.50. En cuanto a conflicto de intereses en representación sucesiva, hemos "elaborado el criterio de 'relación sustancial'. Bajo esta fórmula el cliente sólo tiene que demostrar que la controversia legal envuelta en el pleito en la que el abogado comparece en su contra, estaba relacionada sustancialmente con la materia o causa de acción en la que tal abogado previamente le representó". *In re Carreras Rovira y Suárez Zayas*, 115 D.P.R. 778, 791 (1984). También hemos advertido que "[l]a lealtad del abogado para con su cliente en relación con los asuntos que éste le haya consultado o si le ha encargado su representación, es indivisible y continúa aun después de cesar entre ellos las relaciones de abogado y cliente". *In re Carreras Rovira y Suárez Zayas*, supra, pág. 785.

En el caso de autos, el querellado actuó como abogado notario para los esposos Rosas González-Rodríguez Lebrón en varias ocasiones a partir de 1969 y hasta 1977. Entre 1973 y 1977, el querellado actuó como notario al autorizar las escrituras en las que se acordaron varios negocios jurídicos entre el matrimonio antes mencionado y los esposos Acosta Pagán-Figueroa Mercado. Durante ese tiempo, el querellado también actuó como abogado para los esposos Acosta Pagán-Figueroa Mercado, tanto con relación a los negocios jurídicos antes mencionados como en cuanto a otros asuntos.

El 10 de enero de 1979 los esposos Rosas González-Rodríguez Lebrón demandaron a los esposos Acosta Pagán-Figueroa Mercado en cobro de dinero por la deuda ori-

ginal que surgió de la compraventa objeto de la antes mencionada Escritura Núm. 279. La labor del querellado en representación de los codemandados se limitó a suscribir la contestación a la demanda y a notificarle al foro de instancia del procedimiento de quiebra iniciado por los esposos Acosta Pagán-Figueroa Mercado. Luego renunció a la representación de los codemandados cuando los codemandantes enmendaron la demanda para incluir al querellado como codemandado. Como vemos, el conflicto de intereses en este caso no surge a la luz del Canon 21, *supra*, sino de lo dispuesto por el Canon 38, *supra*,([8]) ya que

> [u]n abogado-notario que reclama judicialmente en representación de una de las partes otorgantes de un documento, para exigir la contraprestación a la que se obligó la otra parte en el documento, da la falsa impresión de que siempre estuvo parcializado con la parte en representación de la cual reclama. *In re Colón Ramery*, 133 D.P.R. 555 (1993), en reconsideración, 138 D.P.R. 793 (1995).

Como la antes citada norma es de carácter prospectivo a partir de haberse emitido dicha opinión, y tomando en consideración que los hechos de este caso son anteriores al referido caso, desestimamos este cargo.([9])

---

([8]) Dicho canon establece la norma de que el abogado, en su gestión profesional, tiene que evitar "hasta la apariencia de conducta profesional impropia". 4 L.P.R.A. Ap. IX, C. 38.

([9]) El Procurador General formuló tres (3) cargos adicionales a los aquí discutidos, a saber:

"El licenciado Jovino Martínez Ramírez violó la Sección 27 de la entonces vigente Ley Notarial, Ley Número 99 del 27 de junio de 1956[,] 4 L.P.R.A. sec. 1027[,] al otorgar ... trece (13) escrituras de segregación, compraventa y liberación de su obra notarial[, entre 1974 y 1976,] sin requerir la presencia de testigos instrumentales o no requerir los apropiados en ley, siendo evidente que el Sr. Esteban Rosa[s] González estaba ciego[.]"

"El licenciado Jovino Martínez Ramírez violó el Canon 35 de los de [É]tica Profesional al proveer información que no se ajusta a la verdad durante la investigación de la queja de marras."

"Las escrituras otorgadas ante el licenciado Martínez Ramírez no fueron leídas por los codemandantes, quienes firmaron las mismas por instrucciones del notario, quien tampoco daba lectura a las escrituras durante los actos de otorgamiento. Esto es una violación a la sección 17 de la entonces vigente Ley Notarial."

Por todo lo antes expuesto, *se dictará sentencia suspendiendo al abogado notario Jovino Martínez Ramírez por un término de seis (6) meses de la práctica de la profesión de abogado e indefinidamente del notariado, hasta que otra cosa disponga este Tribunal. Se ordenará, además, a la Oficina del Alguacil General que proceda inmediatamente a incautarse de los Protocolos y del Registro de Afidávit del licenciado Martínez Ramírez.*

El Juez Asociado Señor Fuster Berlingeri no intervino.

La prueba que obra en el expediente y en los autos no sostiene preponderantemente que el señor Rosas González estuviese ciego para las fechas en que se otorgaron las referidas escrituras. Tampoco estamos convencidos de que el querellado no le haya dado lectura a las escrituras antes mencionadas en su otorgamiento ni de que el querellado no haya sido sincero con el Procurador General. Por lo tanto, también desestimamos estos cargos.