EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| In re:  Ferdinand Vargas Velázquez | 2015 TSPR 120  193 DPR ____ |
| --- | --- |

Número del Caso: CP-2012-20

Fecha: 31 de agosto de 2015

Oficina de la Procuradora General:

    Lcda. Tatiana Grajales Torruella
    Subprocuradora General

    Lcda. Minnie H. Rodríguez López
    Procuradora General Auxiliar

Materia: Conducta Profesional – La suspensión del abogado será efectiva el 2 de septiembre de 2015, fecha en que se le notificó al abogado de su suspensión inmediata.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

Ferdinand Vargas Velázquez

CP-2012-0020

PER CURIAM

En San Juan, Puerto Rico, a 31 de agosto de 2015.

Nos corresponde sancionar a un miembro de la profesión legal por violaciones a los Cánones de Ética Profesional, infra, y La Ley Notarial de Puerto Rico, infra. Por las razones expuestas a continuación, suspendemos al Lcdo. Ferdinand Vargas Velázquez del ejercicio de la notaría y lo suspendemos del ejercicio de la abogacía por el término de seis meses.

I.

**A. AB-2005-112**

Los esposos Sr. Ramón Fuentes Rodríguez y Sra. Catalina Ríos Pabón (los esposos Fuentes-Ríos)

vieron un anuncio en la prensa sobre la venta de un automóvil que les interesó. Se comunicaron con el vendedor, el Sr. Harold García, y coordinaron una cita para ver el vehículo. Los esposos Fuentes-Ríos informaron al señor García que estaban interesados en comprarlo. El señor García les sugirió que hicieran el traspaso del vehículo con un abogado de su confianza, el Lcdo. Ferdinand Vargas Velázquez. Las partes coordinaron una reunión para ir a la oficina de ese abogado.

El señor Fuentes Rodríguez y el señor García acudieron a la oficina del licenciado Vargas Velázquez. El licenciado Vargas Velázquez realizó la legitimación de firmas al dorso del certificado de título del vehículo. El vehículo estaba a nombre del Sr. Melvin Ramírez Ortiz. El señor García firmó con el nombre del titular del vehículo. No se hizo constar de ninguna forma que el Sr. García firmaba en representación del señor Ramírez Ortiz.

Luego, el señor Fuentes Rodríguez y el señor García acudieron al Departamento de Transportación y Obras Públicas para terminar el proceso. Una vez allí, el señor Fuentes Rodríguez se percató de las incongruencias entre el nombre de la persona que le vendió el vehículo y el nombre del titular que aparecía en el certificado de título del vehículo.

Al día siguiente, el automóvil tuvo varios desperfectos mecánicos. Por tal razón, los esposos Fuentes-Ríos fueron a la oficina del licenciado Vargas Velázquez y

le solicitaron información sobre el vendedor. Además, le llamaron la atención sobre los pormenores del traspaso. El licenciado Vargas Velázquez les indicó que ese tipo de negocio era usual. Le explicó que se trataba de un mandato verbal y que no se requería autorización escrita del dueño registral porque el señor García era de su confianza.

Ante tales hechos, los esposos Fuentes-Ríos presentaron una queja ante este Tribunal. Alegaron que el licenciado Vargas Velázquez no estuvo presente durante el traspaso y que el señor García firmó como si fuera el dueño registral del vehículo. El licenciado Vargas Velázquez presentó las mismas defensas expuestas ante los quejosos.

Referimos el asunto a la Oficina del Procurador General y esta recomendó que se refiriera el asunto a la Oficina de Inspección de Notarías (ODIN) para la continuación del proceso disciplinario en contra del licenciado Vargas Velázquez. La ODIN emitió un informe y concluyó que el licenciado Vargas Velázquez violó los Cánones 35 y 38 de Ética Profesional, y la Ley Notarial.

### B. AB-2006-201

El Sr. Francisco Delgado Villegas y la Sra. Asunción Santa Morales murieron sin dejar testamento. Ambos procrearon 11 hijos: Monserrate, Ismael, José Antonio, Rafael, Laura, Francisco, Ramón, Pablo, Candelario,

Maximina y Ezequiel, todos de apellido Delgado Santa (Sucesión Delgado Santa).[1]

En el 1999, el Sr. Ramón Benítez Sepúlveda, esposo de Monserrate Delgado Santa, contrató al licenciado Vargas Velázquez para tramitar la liquidación de la Sucesión Delgado Santa y la venta de un inmueble inscrito como la finca número 26,580 de Guaynabo que pertenecía a la Sucesión.

Como gestión inicial, el 21 de octubre de 2002, el licenciado Vargas Velázquez autorizó la Escritura Núm. 63 sobre Protocolización de Poder. Mediante esta Escritura se protocolizaron tres documentos de poder autorizados en los Estados Unidos por Laura Delgado Santa, Francisco Delgado Santa y Ramón Delgado Sterling en los cuales estos confirieron a Ismael Delgado Santa, hermano de los primeros dos y tío del tercero, la facultad de disponer de sus derechos sobre la propiedad de Guaynabo.

El 7 de diciembre de 2002, el licenciado Vargas Velázquez autorizó la Escritura Núm. 67 sobre Protocolización de Poder, mediante la cual Pablo Manuel Delgado García concedió a su tío Ismael Delgado Santa la facultad para representarle en todo asunto relacionado a la propiedad de Guaynabo.

---

[1]Mientras estaba pendiente el procedimiento disciplinario, el Tribunal de Primera Instancia declaró como únicos y herederos universales a los 11 hijos del señor Delgado Villegas y la señora Santa Morales.

El 2 de junio de 2004, el licenciado Vargas Velázquez autorizó la Escritura Núm. 40 (Escritura Núm. 40) sobre Adjudicación de Herencia y Cesión de Derechos. En ese instrumento comparecieron los señores Benítez Sepúlveda y su esposa para adquirir el inmueble de Guaynabo.

En dicha escritura se consignó la comparecencia de 14 personas como los vendedores de la propiedad: Ismael, José Antonio, Rafael, Laura y Francisco, de apellidos Delgado Santa; Ramón y Ana Asunción Delgado Sterling; Francisco, Cándido, Luz Celia y Carmen Delgado Villegas, Pablo Delgado García, Carmen Delgado Figueroa y Virgen Rosado Delgado. La escritura dispuso lo siguiente: "Que las partes vendedoras son codueños en común proindiviso de la propiedad hereditaria-----dejada por sus finados padre, madre y abuelos Don Francisco Delgado Villegas, Asunción Santa Morales".

El licenciado Vargas Velázquez no constató, antes de autorizar la Escritura Núm. 40, que se hubiese tramitado una declaratoria de herederos. En la Escritura se describió la propiedad y su historial, pero no se hizo referencia a ningún estudio de título ni certificación registral. El licenciado Vargas Velázquez adjudicó las participaciones de la propiedad sobre un valor fijo  que distribuyó entre los comparecientes.

Al final de la escritura, el licenciado Vargas Velázquez consignó lo siguiente: "Con la anuencia de las partes se aclara que Doña Carmen Delgado Figueroa, Doña Ana

Asunción Delgado Sterling, Don José Delgado Santa, Don Rafael Delgado Santa y Don Francisco Villegas no suscribieron la presente escritura, Repito la Fe". Por tal razón, la escritura no tiene la firma e iniciales de esos comparecientes. Tampoco aparece la firma y las iniciales de Virgen Rosado Delgado. Tampoco se explica por qué el licenciado Vargas Velázquez incluyó la firma e iniciales de Mercedes Villegas Cordero, a quien no identificó en la comparecencia ni acreditó la capacidad en que compareció para firmar e iniciar el documento.

El 10 de julio de 2004 el licenciado Vargas Velázquez autorizó la Escritura Núm. 51 mediante la cual José Antonio Delgado Santa, uno de los herederos que no compareció en la Escritura Núm. 40, compareció para adjudicarse su porción sobre el inmueble de Guaynabo y venderla a Monserrate Delgado Santa y Ramón Benítez Sepúlveda. No se menciona nada sobre la Escritura Núm. 40 ni sobre la declaratoria de herederos. Ese mismo día, el licenciado Vargas Velázquez autorizó la Escritura Núm. 53 mediante la cual se le adjudicó a Carmen Delgado Figueroa, otra de las herederas que no compareció en la Escritura Núm. 40, su porción correspondiente en la propiedad de Guaynabo y se la vende a Monserrate Delgado Santa y Ramón Benítez Sepúlveda. El 2 de octubre de 2004, el licenciado Vargas Velázquez autorizó otra Escritura mediante la cual Rafael Delgado Santa realizó las mismas transacciones.

El 14 de febrero de 2005, el licenciado Vargas Velázquez autorizó la Escritura Núm. 15 sobre Protocolización de Poder mediante la que se protocolizó un poder otorgado en Estados Unidos por Ana Asunción Delgado Sterling a favor de Ismael Delgado Santa para que lo representara en los asuntos de los bienes adquiridos por herencia. Ese mismo día autorizó la Escritura Núm. 16 sobre Ratificación de Adjudicación, Partición y Compraventa mediante la que Ana Asunción Delgado Sterling, quien no firmó la Escritura Núm. 40, ratificaba el acto jurídico contenido en esa Escritura que Ismael Delgado Santa hizo a su nombre. Se hizo constar que en aquel momento el licenciado Vargas Velázquez corroboró la existencia de un mandato verbal entre ellos dos. La Escritura Núm. 40 no hizo ninguna referencia al supuesto mandato.

El licenciado Vargas Velázquez contrató a una persona para que presentara todas las escrituras relacionadas con la Sucesión ante el Registro de la Propiedad. Las escrituras no se presentaron.

El 4 de agosto de 2006, el señor Ramón Benítez Sepúlveda presentó una queja juramentada ante este Tribunal en contra del licenciado Vargas Velázquez. Alegó que contrató al licenciado Vargas Velázquez para los trámites de la compraventa de la propiedad de Guaynabo, pero después de siete años, nunca se le entregó copia de la Escritura Núm. 40.

Remitimos el asunto a ODIN y esta emitió un informe. En su informe incluyó que el licenciado Vargas Velázquez no había sometido los Informes Estadísticos Anuales para los años 2004, 2006 y 2007. La Oficina del Procurador General emitió su informe. Consolidamos las quejas y le ordenamos a la Procuradora General que presentara la querella correspondiente.

La Procuradora General le imputó al licenciado Vargas Velázquez la violación de los Artículos 2, 16, 24, 28, 34 y 56 de la Ley Notarial, infra, las Reglas 34 y 67 del Reglamento Notarial, infra, y los Cánones 18, 35 y 38 de Ética Profesional, infra. El licenciado Vargas Velázquez contestó la querella. Designamos un Comisionado Especial, quien rindió un informe con sus determinaciones de hecho. Luego de acoger esas determinaciones, resolvemos.

II.

Como parte de la primera queja, la Procuradora General le imputó al licenciado la violación del Art. 56 de la Ley Notarial, la Regla 67 del Reglamento Notarial y los Cánones 18, 35 y 38 de Ética Profesional. Concluimos que el licenciado Vargas Velázquez cometió las violaciones imputadas.

El Art. 2.34 de la Ley Núm. 22-2000, 9 LPRA sec. 5035, establece que el traspaso de un vehículo debe autorizarse mediante la firma del dueño del vehículo de motor y del adquirente, y debe expresar la voluntad de traspasar la propiedad del vehículo. El traspaso, de acuerdo a esa ley,

tiene que hacerse bajo juramento o afirmación ante notario público, colector de rentas internas o empleado en que por escrito expresamente se delegue. Id.

El Art. 56 de la Ley Notarial, 4 LPRA sec. 2091, establece que el testimonio o la declaración de autenticidad es aquel documento mediante el cual el notario da fe de un documento que no obra en su Protocolo, de su fecha y, entre otros, de la legitimación de las firmas que aparezcan en este.

La Regla 67 del Reglamento Notarial, 4 LPRA Ap. XXIV, define el testimonio de legitimación de firma como aquel testimonio que acredita el hecho de que, en determinada fecha, se firmó un documento en presencia del notario y que esa persona es quien dice ser. Indica, además, que la legitimación de la firma podrá o no comprender el juramento y que el notario tiene que hacer constar, tanto en el testimonio como en el Registro de Testimonios, que conoce personalmente al firmante o que lo ha identificado mediante los métodos supletorios que provee el Art. 17 de la Ley Notarial de Puerto Rico, 4 LPRA sec. 2035.

Las declaraciones juradas son testimonios de legitimación de firma. In re Llanis Menéndez, 175 DPR 22 (2008). Los notarios "[d]eben ser exigentes y abstenerse de dar fe notarial de [una] declaración jurada si la persona que va a otorgar el documento o la declaración jurada no ha comparecido personalmente". In re Sánchez Ruiz, 105 DPR 848, 849 (1977). Véanse, además: In re Rivera

Aponte, 169 DPR 738, 744 (2006); In re Surillo Ascar, 160 DPR 742, 743 (2004); In re Medina Lugo, 136 DPR 120, 124 (1994); In re Vargas Hernández, 135 DPR 603, 608 (1994).

En una declaración jurada, la fe pública se concretiza a través de la persona del notario con la presencia del compareciente o firmante. Si el documento es autorizado en ausencia del firmante, el notario quebranta la fe pública notarial y afecta la confianza depositada en el sistema de autenticidad documental. In re Medina Lugo, supra; In re González González, 119 DPR 496, 499 (1987).

Hemos señalado que la certificación de un hecho falso es una de las faltas más graves en que puede incurrir un notario. In re Rivera Aponte, supra; In re Surillo Ascar, supra; In re Vargas Hernández, supra, pág. 607. Hemos indicado, además, que certificar un hecho falso no solo viola las disposiciones de la Ley Notarial de Puerto Rico, sino que también viola el deber de sinceridad y honradez que impone el Canon 35 del Código de Ética Profesional, 4 LPRA Ap. IX, a todos los abogados, así como el deber de practicar la profesión de una forma honrosa y digna que impone el Canon 38, 4 LPRA Ap. IX. Véanse, además: In re Charbonier Laureano, 156 DPR 575, 579 (2002); In re Vera Vélez, 148 DPR 1, 7-8 (1999); In re Rivera Arvelo y Ortiz Velázquez, 132 DPR 840, 863 (1993).

El Canon 18 del Código de Ética Profesional, 4 LPRA Ap. IX, le exige al abogado rendir una labor idónea de competencia y diligencia. A pesar de que este canon

menciona esta labor idónea con relación al cliente, reiteradamente hemos interpretado que este aplica a la labor del abogado-notario. Véanse: In re González Maldonado, 152 DPR 871 (2000); In re Martínez Ramírez, 142 DPR 329, 340-341 (1997); In re Salichs Martínez, 131 DPR 481, 487-488 (1992); In re Díaz García, 104 DPR 604, 608 (1976).

El licenciado Vargas Velázquez, durante el traspaso del vehículo que los esposos Fuentes-Ríos compraron, dio fe de que Melvin Ramírez Ortiz, dueño registral, era la persona que firmó el título de propiedad. Sin embargo, el señor Ramírez Ortiz no fue la persona que firmó el título de propiedad, sino el Sr. Harold García. Al así proceder, certificó como cierto bajo la fe notarial un hecho falso. Esa conducta violó el Art. 56 de la Ley Notarial, la Regla 67 del Reglamento Notarial y los Cánones 18, 35 y 38 de Ética Profesional.

III.

Como parte de la segunda queja, la Procuradora General le imputó al licenciado Vargas Velázquez la violación de los artículos 2, 16, 24, 28 y 34 de la Ley Notarial, y de los Cánones 18 y 35 de Ética Profesional. Concluimos que el licenciado Vargas Velázquez cometió las violaciones imputadas.

A. El Art. 58 de la Ley Hipotecaria, 30 LPRA sec. 2261, establece que "[n]o se inscribirá el documento de partición de bienes hereditarios o de transferencia o

gravamen del derecho hereditario si antes no apareciere previamente inscrito el derecho hereditario a nombre de los herederos". Véase Herederos de Collazo v. Registrador, 172 DPR 776 (2007).

La tramitación de la inscripción del derecho hereditario depende del título en que conste ese derecho. L. Rivera Rivera, *Derecho Registral Inmobiliario Puertorriqueño*, 2da ed., San Juan, Eds. Jurídicas, 2002, pág. 429. Si se trata de una sucesión intestada, el título inscribible será la declaratoria de herederos y tienen que consignarse los particulares de la declaración judicial, como la fecha del fallecimiento, el estado civil del causante en esa fecha y la existencia de herederos. Id. Esa declaratoria de herederos se obtiene mediante la presentación de una acción judicial al amparo de los Artículos 552 y 553 del Código de Enjuiciamiento Civil, 32 LPRA sec. 2301.

En otras palabras, nuestro ordenamiento requiere que en las sucesiones intestadas se realice una declaratoria de herederos antes de inscribir la partición de los bienes hereditarios o la transmisión de un derecho hereditario.

B. El Art. 16 de la Ley Notarial de Puerto Rico, 4 LPRA sec. 2034, dispone que "[l]os otorgantes y los testigos firmarán la escritura y además estamparán las letras iniciales de su nombre y apellido o apellidos al margen de cada una de las hojas del instrumento, las cuales rubricará y sellará el notario".

De otra parte, el Art. 28 de la Ley Notarial de Puerto Rico, 4 LPRA sec. 2046, establece, en lo pertinente, que "[s]i no hubiere testigos, será innecesario que los comparecientes firmen el documento todos juntos en presencia del notario, sino que este podrá recibir personalmente sus firmas en cualquier tiempo, dentro del mismo día natural del otorgamiento".

Finalmente, el Art. 34 de la Ley Notarial de Puerto Rico, 4 LPRA sec. 2052, dispone, en lo aquí pertinente, que serán nulos aquellos instrumentos en los cuales "no aparezcan las firmas de las partes y testigos cuando deban hacerlo y la firma del notario".

Así, para que una escritura pública sea válida debe tener al final del documento la firma de los comparecientes y al margen de cada uno de los folios sus iniciales. In re Vargas Cintrón, 153 DPR 520 (2001). La firma de los otorgantes constituye un requisito esencial de un instrumento público. Sucn. Santos v. Registrador, 108 DPR 831, 837 (1979). Corresponde al notario el deber de tomarlas dentro del mismo día natural. In re Torres Olmeda, 145 DPR 384 (1998). La omisión de tomar la firma e iniciales no solo es una falta notarial grave y una violación a la fe pública de que están investidos los notarios, sino que además es causa de nulidad del instrumento público. Véase In re Moreira Avillán, 147 DPR 78 (1998).

El notario que autoriza una escritura y hace constar en ella hechos contrarios a la realidad registral viola el Canon 35 de Ética Profesional, supra. In re Ayala Oquendo, 185 DPR 572, 581 (2012). Asimismo, autorizar una escritura sin conocer los antecedentes registrales mediante la realización de un estudio de título de la propiedad constituye, además de una violación a la fe pública notarial, una violación del Canon 35 del Código de Ética Profesional, supra. In re Ayala Oquendo, supra.

El notario está obligado a cumplir con la Ley Notarial de Puerto Rico y su reglamento, con los Cánones de Ética Profesional y con las leyes pertinentes a los documentos que autoriza. In re Vargas Velázquez, 190 DPR 730, 734 (2014). El desconocimiento de las normas jurídicas y del ejercicio de la profesión vulneran la naturaleza misma del notariado en nuestra jurisdicción y constituyen una violación al Canon 18 de Ética Profesional. Id. Véanse, además: In re Ortiz Medina, 175 DPR 43, 49 (2008). In re Aponte Berdecía, 161 DPR 94 (2004).

C. En este caso, el licenciado Vargas Velázquez autorizó la Escritura Núm. 40 para hacer la partición de una herencia y viabilizar la compraventa del inmueble de Guaynabo. El licenciado Vargas Velázquez se comprometió a llevar esa Escritura al Registro para su inscripción. Sin embargo, para que esa escritura fuera inscrita, tenía que estar inscrito primero el derecho hereditario. En este caso el derecho hereditario no estaba inscrito. El licenciado

Vargas Velázquez, antes de tramitar la inscripción de la Escritura Núm. 40, debía cerciorarse de que ese derecho hereditario estuviese inscrito o, en su defecto, asesorar a los otorgantes para lograr la inscripción de ese derecho a través de una declaratoria de herederos.

Al no hacerlo, el licenciado comprometió la capacidad de la Escritura Núm. 40 para lograr acceso en el Registro. El desconocimiento de estas normas constituye una violación del Canon 18, supra. Véase, además, In re Pacheco Pacheco, Op. de 26 de marzo de 2015, 2015 TSPR 26, 191 DPR ___ (2015) ("el notario queda compelido a ejercer diligentemente su función [...] hasta cerciorarse de que el instrumento público no posee defectos que impidan su inscripción en el Registro de la Propiedad").

Por otro lado, el licenciado Vargas Velázquez identificó como otorgantes en la Escritura Núm. 40 a Carmen Delgado Figueroa, Ana Asunción Delgado Sterling, José Delgado Santa, Rafael Delgado Santa y Francisco Villegas. Sin embargo, esas personas no firmaron ni iniciaron esa escritura. Al así proceder, el licenciado Vargas Velázquez no cumplió con el Art. 16 de la Ley Notarial de Puerto Rico, supra.

La omisión de las firmas de esos otorgantes, de acuerdo al Art. 34 de la Ley Notarial, supra, es causa de nulidad de la Escritura Núm. 40. Al otorgar un instrumento con esa deficiencia, el licenciado Vargas Velázquez violó la fe pública notarial.

El licenciado Vargas Velázquez autorizó la Escritura Num. 40 sin realizar un estudio de título de la propiedad de Guaynabo. No surge de la escritura que el licenciado Vargas Velázquez le haya advertido a los otorgantes sobre la conveniencia de realizar ese estudio. Al no realizar un estudio de título para el negocio de compraventa que autorizó el licenciado Vargas Velázquez violó la fe pública notarial y, a su vez, el Canon 35 de Ética Profesional, supra.

Finalmente, el licenciado Vargas Velázquez se obligó voluntariamente a presentar la Escritura Núm. 40 en el Registro, pero la gestión no se llevó a cabo. Aunque delegó esa encomienda a otra persona, tenía que asegurarse de que el documento se presentara en el Registro si asumió esa obligación. Al no hacerlo, el licenciado Vargas Velázquez violó el Canon 18 de Ética Profesional, supra. Véase In re Martínez Ramírez, 142 DPR 329 (1997).

IV.

Esta no es la primera vez que el licenciado Vargas Velázquez viola los Cánones de Ética Profesional. Primero lo suspendimos en 1979 del ejercicio de la notaría. Luego lo censuramos enérgicamente en In re Vargas Velázquez, supra, por violar el Canon 18 de Ética Profesional. Tomando en consideración esos antecedentes, suspendemos al licenciado Vargas Velázquez del ejercicio de la abogacía por un término de seis meses y lo suspendemos indefinidamente del ejercicio de la notaría.

El licenciado Vargas Velázquez deberá notificar a sus clientes que, por motivo de su suspensión, no podrá continuar proveyéndoles consultoría ni representación legal, y devolverá a estos los expedientes de cualquier caso ya atendido o pendiente de resolución y los honorarios que haya percibido por trabajos no realizados. De igual manera, tendrá la responsabilidad de informar de su suspensión a cualquier foro judicial o administrativo en el que tenga algún caso pendiente y mantenernos informados de cualquier cambio en su dirección, teléfono y correo electrónico. Deberá acreditar y certificar ante este Tribunal el cumplimiento con todo lo anterior, dentro del término de treinta (30) días, contados a partir de la notificación de la presente Opinión *Per Curiam* y Sentencia.

Se ordena al Alguacil de este Tribunal que incaute inmediatamente la obra y el sello notarial del señor Vargas Velázquez. Por último, concedemos al señor Vargas Velázquez un término de sesenta (60) días para subsanar las deficiencias señaladas por la ODIN en sus informes.

Se dictará Sentencia de conformidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

Ferdinand Vargas Velázquez

CP-2012-0020

SENTENCIA

En San Juan, Puerto Rico, a 31 de agosto de 2015.

Por los fundamentos expuestos, en la Opinión Per Curiam que antecede, la cual se hace formar parte integrante de la presente Sentencia, suspendemos al licenciado Vargas Velázquez del ejercicio de la abogacía por un término de seis meses y lo suspendemos indefinidamente del ejercicio de la notaría.

El licenciado Vargas Velázquez deberá notificar a sus clientes que, por motivo de su suspensión, no podrá continuar proveyéndoles consultoría ni representación legal, y devolverá a estos los expedientes de cualquier caso ya atendido o pendiente de resolución y los honorarios que haya percibido por trabajos no realizados. De igual manera, tendrá la responsabilidad de informar de su suspensión a cualquier foro judicial o administrativo en el que tenga algún caso pendiente y mantenernos informados de cualquier cambio en su dirección, teléfono y correo electrónico. Deberá acreditar y certificar ante este Tribunal el cumplimiento con todo lo anterior, dentro del término de treinta (30) días, contados a partir de

la notificación de la presente Opinión *Per Curiam* y Sentencia.

Se ordena al Alguacil de este Tribunal que incaute inmediatamente la obra y el sello notarial del señor Vargas Velázquez. Por último, concedemos al señor Vargas Velázquez un término de sesenta (60) días para subsanar las deficiencias señaladas por la ODIN en sus informes.

Lo acordó y ordena el Tribunal, y lo certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Rivera García no intervino. La Jueza Asociada Oronoz Rodríguez está inhibida.

Aida I. Oquendo Graulau
Secretaria del Tribunal Supremo