*In re* RAFAEL R. FUERTES, querellado.

*Número:* 102. *Resuelto:* 13 de septiembre de 1961.

*Gabriel de la Haba, Alberto Picó, José A. Suro* y *Francisco Torres Aguiar*, abogados del querellado; *J. B. Fernández Badillo, Procurador General* y *Rodolfo Cruz Contreras, Procurador General Auxiliar*, abogados de El Pueblo.

PER CURIAM: En cumplimiento de nuestra resolución dictada el 11 de diciembre de 1959 en el presente procedimiento de desaforo el Procurador General de Puerto Rico presentó el 7 de enero de 1960 una querella de *disbarment* contra el abogado Rafael Fuertes que contiene los siguientes cargos:

"1. El querellado Lic. Rafael R. Fuertes violó lo dispuesto por la sección 15 de la entonces vigente Ley Notarial, 4 L.P.R.A. sec. 825, y el Canon núm. 22 de los de Ética Profesional, al actuar como notario en el otorgamiento de la escritura núm. 16 de 6 de noviembre de 1954 sin que estuviesen presentes los testigos, a pesar de lo cual, hizo constar, falsamente, en la referida escritura que ésta se otorgaba ante los referidos testigos.

"2. El querellado, Lic. Rafael R. Fuertes, incurrió en conducta impropia de un abogado al inducir al Lic. Antonio Sandín del Manzano, subalterno suyo, a violar lo dispuesto por la sección 15 de la Ley Notarial entonces vigente, 4 L.P.R.A. sec. 825, al requerirle que firmase como testigo de la escritura núm. 16 de 6 de noviembre de 1954 ante el querellado, en cuyo acto de otorgamiento no estuvo presente el referido Lic. Antonio Sandín del Manzano.

"3. El querellado, Lic. Rafael R. Fuertes, incurrió en conducta impropia de un abogado al inducir a la señorita Teresa Biaggi Lugo, subalterna del querellado, a violar lo dispuesto en la sección 15 de la entonces vigente Ley Notarial, 4 L.P.R.A. sec. 825, al requerirle que firmase como testigo de la escritura núm. 16 de 6 de noviembre de 1954 ante el querellado, en cuyo otorgamiento no estuvo presente la referida Teresa Biaggi Lugo.

"4. El querellado violó lo dispuesto por la sec. 17 de la Ley Notarial vigente, 4 L.P.R.A. sec. 827, cuando al actuar como notario en el otorgamiento de la escritura núm. 16 de 6 noviembre de 1954, dejó en ésta espacios en blanco, los cuales fueron llenados luego del otorgamiento por el querellado o por su secretaria.

"5. El querellado actuó como notario en el otorgamiento de la escritura núm. 16 de 6 de noviembre de 1954 en la cual era parte interesada. Al hacer esto, el querellado violó lo dispuesto por la Sección 8 de la Ley Notarial, entonces vigente, 4 L.P.R.A., sec. 818, e incurrió en conducta inmoral e impropia de un abogado.

"6. El querellado violó el juramento dispuesto por la sección 5 de la entonces vigente Ley Notarial, 4 L.P.R.A., sec. 815, el cual prestó al entrar en el ejercicio de su cargo, e incurrió en una violación del Canon núm. 22 de los de Ética Profesional y en conducta inmoral e impropia de un abogado cuando, al actuar como notario en el otorgamiento de la escritura número 16 de 6 de noviembre de 1954, manifestó falsamente al Sr. Artemio Pedrosa, uno de los otorgantes, que, según habían pactado, la obligación garantizada por la hipoteca que se constituía mediante la referida escritura sería por un término de tres años, a pesar de lo cual hizo constar en la escritura un vencimiento en el término de un año.

"7. El querellado, Lic. Rafael R. Fuertes, incurrió en conducta impropia de un abogado cuando, al manifestar que actuaba en representación del Lic. Rafael Rodríguez Ema, requirió del Sr. Artemio Pedrosa que le pagase $42.00 como honorarios para el referido abogado quien—según manifestó el querellado—era el notario que iba a intervenir en el otorgamiento de la escritura que resultó ser la núm. 16 de 6 de noviembre de 1954 ante el querellado, cuando el Lic. Rafael Rodríguez Ema no iba a intervenir, ni intervino en tal otorgamiento.

"8. El querellado, Lic. Rafael R. Fuertes, cobró al Sr. Artemio Pedrosa intereses usurarios sobre un préstamo por la cantidad de $2,000, incurriendo así en el delito de usura, *misdemeanor*, (33 L.P.R.A., sec. 1751) y en conducta inmoral e impropia de un abogado.

"9. El querellado cobró al Sr. Artemio Pedrosa intereses usurarios sobre un préstamo por la cantidad de $300, incurriendo así en el delito de usura, *misdemeanor*, (33 L.P.R.A., sec. 1751) y en conducta inmoral e impropia de un abogado."

Contestó el querellado los cargos en la siguiente forma:

"1. En cuanto a los cargos número 1, 2 y 3, el querellado admite que en el otorgamiento ante él de la escritura número 16 de 6 de noviembre de 1954, no estuvieron presentes el Lic. Antonio Sandín del Manzano, ni la Srta. Teresa Biaggi Lugo, quienes figuran como testigos en dicha escritura, a pesar de que en la misma se hace constar que estuvieron presentes; se niega el resto de las alegaciones contenidas en dichos cargos, alegando además el querellado que sus actuaciones a ese respecto fueron de entera buena fe y no causaron perjuicios ni lesio-

naron los derechos de persona alguna y, finalmente, que a la fecha del otorgamiento de la escritura en cuestión el requisito de la presencia de testigos era generalmente considerado como obsoleto e innecesario, hasta el punto, que pocos meses después de otorgada la mencionada escritura número 16, se presentó el proyecto del Senado 551 que luego se convirtió en la Ley núm. 99 de 27 de junio de 1956 (4 L.P.R.A. 13), la cual dispone, específicamente, que no será necesaria la presencia de testigos al otorgarse escrituras de la naturaleza de la autorizada por el querellado.

"2. En cuanto al cargo número 4, el querellado niega haber violado la disposición legal a que se refiere dicho cargo, alegando en contrario que los espacios en blanco que se llenaron luego de otorgarse la escritura fueron los que necesaria e indispensablemente tenían que dejarse en blanco.

"3. El querellado niega lo alegado en los cargos números 5, 6, 7, 8 y 9." (1)

Por resolución del 13 de mayo de 1960 nombramos al Juez Federico Tilén para actuar de Comisionado Especial a los efectos de oír y recibir la prueba que las partes pudieran presentarle, certificar la misma y remitirla a este Tribunal con sus conclusiones de hecho.

Se celebraron vistas ante el Comisionado Especial, y éste, después de haber considerado la prueba aducida por las partes, una estipulación sometida por ellas sobre ciertos hechos y los alegatos sometidos, llegó a las siguientes "Conclusiones de Hecho":

"El querellado, Lic. Rafael R. Fuertes, es abogado y notario desde 1938, con un encomiable historial profesional, religioso y cívico. El Sr. Artemio Pedrosa cursó cinco años de escuela elemental, trabajó mucho tiempo en la agricultura, y después ha sido empleado en el Departamento de Agricultura y Comercio. Era dueño de una finca de cerca de una cuerda de terreno en el barrio Monacillos, de Río Piedras. La querella en este caso surgió como resultado de dos préstamos hechos por el primero

(1) De las llamadas "Defensas Especiales", entre ellas las de prescripción del delito de usura, habíamos dispuesto por nuestra resolución del 31 de marzo de 1960. Como tales las consideramos improcedentes.

:al segundo, siendo los cargos los que se exponen bajo los núme-
·ros del I al IX.

'I. El querellado, Lcdo. Rafael R. Fuertes, violó lo dispuesto
por la sección 15 de la entonces vigente Ley Notarial, 4 L.P.R.A.
Sec. 825, y el Canon núm. 22 de los de Ética Profesional, al
actuar como notario en el otorgamiento de la escritura núm. 16
de 6 de noviembre de 1954 sin que estuviesen presentes los
testigos, a pesar de lo cual, hizo constar, falsamente, en la refe-
rida escritura que ésta se otorgaba ante los referidos testigos.

'II. El querellado, Lcdo. Rafael R. Fuertes, incurrió en con-
ducta impropia de un abogado al inducir al Lcdo. Antonio San-
dín del Manzano subalterno suyo, a violar lo dispuesto por la
sección 15 de la Ley Notarial entonces vigente 4 L.P.R.A. Sec.
825, al requerirle que firmase como testigo de la escritura
núm. 16 de 6 de noviembre de 1954 ante el querellado en cuyo
acto de otorgamiento no estuvo presente el referido Lcdo. Antonio
Sandín del Manzano.

'III. El querellado incurrió en conducta impropia de un
abogado al inducir a la señorita Teresa Biaggi Lugo, subalterna
del querellado, a violar lo dispuesto en la Sección 15 de la enton-
ces vigente Ley Notarial, 4 L.P.R.A. Sec. 825 al requerirle
que firmase como testigo de la escritura núm. 16 de 6 de noviem-
bre de 1954 ante el querellado, en cuyo otorgamiento no estuvo
presente la referida Teresa Biaggi Lugo.'

"En cuanto a estos tres cargos la prueba demuestra lo
siguiente:

"Para el 1954 el Lic. Fuertes tenía un capital de ciento
cincuenta mil ($150,000) dólares y ocupaba el cargo de jefe
de la División Legal de la Junta de Planificación de Puerto
Rico. El 6 de noviembre de ese año fue a la residencia del
Sr. Pedrosa y obtuvo las firmas de éste y esposa en la escritura
que autorizaba el propio querellado—Escritura núm. 16 de
Hipoteca en Garantía de Pagaré al Portador, otorgada el seis
de noviembre de 1961. En esa escritura el querellado, en su
carácter de notario, hizo constar que los otorgantes y testigos
firmaron todos en un solo acto, cuando lo cierto es que éstos
no estaban presentes y firmaron algún día posterior al 6 de
noviembre de 1954.

"Las personas que aparecen como testigos de la escritura
eran subalternos del querellado y firmaron a solicitud de éste.
El Lic. A. Sandín del Manzano era abogado en la Junta de

Planificación y la señorita Teresa Biaggi era una de las secretarias de la División Legal de la Junta.

'IV. El querellado violó lo dispuesto por la Sección 17 de la Ley Notarial vigente, 4 LPRA Sección 827, cuando al actuar como notario en el otorgamiento de la escritura núm. 16 de 6 de noviembre de 1954 dejó en ésta espacios en blanco, los cuales fueron llenados luego del otorgamiento por el querellado o por su secretaria.'

"Sobre este cargo la prueba indica que cuando en la tarde del 6 de noviembre de 1954 los esposos Pedrosa-Berríos firmaron ante el querellado la escritura de hipoteca, permanecían en blanco los espacios correspondientes al número y fecha de la escritura, el día del mes de noviembre y el año de vencimiento del pagaré, el número del affidavit del pagaré y el nombre de los testigos. Véase subrayado con lápiz rojo en el Exhibit 5, querellante. No se ha probado que esos espacios en blanco subsistieron al autorizarse finalmente la escritura.

'V. El querellado actuó como notario en el otorgamiento de la escritura núm. 16 de 6 de noviembre de 1954 en la cual era parte interesada. Al hacer esto, el querellado violó lo dispuesto por la Sección 8 de la Ley Notarial, entonces vigente, 4 LPRA, Sec. 818, e incurrió en conducta inmoral e impropia de un abogado.'

'VI. El querellado violó el juramento dispuesto por la sección 5 de la entonces vigente Ley Notarial, 4 LPRA, Sección 815, el cual prestó al entrar en el ejercicio de su cargo, e incurrió en una violación del Canon núm. 22 de los de Etica Profesional y en conducta inmoral e impropia de un abogado cuando, al actuar como notario en el otorgamiento de la escritura número 16 de 6 de noviembre de 1954, manifestó falsamente al Sr. Pedrosa, uno de los otorgantes, que, según habían pactado, la obligación garantizada por la hipoteca que se connstituía mediante la referida escritura sería por un término de tres años, a pesar de lo cual hizo constar en la escritura un vencimiento en el término de un año.'

"La prueba testifical presentada con relación a estos dos cargos y los siguientes es sumamente contradictoria en muchos aspectos. Ello ha requerido que hiciéramos un análisis detenido de todos los detalles de la prueba para formar juicio sobre lo realmente ocurrido.

"El Sr. Pedrosa estaba en una situación económica muy difícil y necesitó un préstamo. A tal fin encargó al corredor, Sr. Bernabé Martínez, para que le consiguiera el dinero. El Sr. Martínez lo llevó donde el Lic. Fuertes para que éste le hiciera el préstamo. El querellado, después de algún titubeo, convino con el Sr. Pedrosa en prestarle dos mil dólares para que éste le pagara tres mil ($3,000) dólares más el 9% de interés en caso de demora. Parece que el Sr. Pedrosa habló de que el préstamo fuese por tres años, pero creemos que el término no se estipuló expresamente. El Lic. Fuertes le indicó al corredor que fuera donde el Lic. Rafael Rodríguez Ema para que redactara la escritura de hipoteca.

"El día 6 de noviembre de 1954, estando lista la escritura y no pudiendo la Sra. Berríos de Pedrosa venir a San Juan, ni el Lic. Rodríguez Ema ir a la casa del Sr. Pedrosa, y debido a la urgencia que tenía el Sr. Pedrosa el Lic. Fuertes decidió ir a la residencia del Sr. Pedrosa para allí cogerle las firmas a los esposos Pedrosa-Berríos. A tal fin avisó a la oficina del Lic. Rodríguez Ema para que le enviaran la escritura después que cambiaran el nombre del notario autorizante. Efectivamente, al salir de su trabajo esa tarde y acompañado del Sr. Martínez, el querellado fue a la casa del referido matrimonio. Allí el Lic. Fuertes leyó en voz alta la escritura. Cuando el Sr. Pedrosa protestó de que la escritura fijase el vencimiento al año del otorgamiento, el Lic. Fuertes les manifestó que en vez de empezar a devengar intereses al año sería al año y medio, y que el préstamo subsistiría por tres años siempre que se pagara el interés correspondiente después de transcurrido año y medio. A tal fin el querellado escribió de su puño y letra y firmó al dorso de un impreso de recibo lo siguiente:

'6 de nov. de 1954.—Sirve la presente para hacer constar que este pagaré no devengará intereses de clase alguna hasta que transcurra un año y medio de haberse suscrito o se venda la finca hipotecada, el que ocurra primero. (Fdo.) R. Fuertes.'

"Lo mismo escribió y firmó el querellado al dorso del pagaré hipotecario al portador firmado esa tarde por los esposos Pedrosa-Berríos.

"La escritura aparece, pues, otorgada ante el querellado como notario—Exhibit 5, querellante—y, como era de hipoteca en garantía de pagaré al portador, solamente la suscribieron

como otorgantes el Sr. Artemio Pedrosa y su esposa la Sra. Inocencia Berríos. El dinero fue entregado de contado en ese acto por el propio querellado, sin mencionar que el dinero no le pertenecía. Durante la investigación de estos hechos por el Fiscal, el querellado decía que el dinero no era de él pero que no recordaba de quién era. En la vista ante nos éste declaró que en 1958 recordó que el dinero era de su hermano de madre el Sr. Antonio R. Romanacce.

"Considerando todas las circunstancias de este caso, concluimos que el dinero prestado era del Lic. Fuertes, o estaba bajo su custodia en tal forma que él podía disponer libremente. Aun en el supuesto de que el dinero fuera de su medio hermano, notamos que éste es un pariente en el segundo grado civil o de consanguinidad del notario.

'VII. El querellado, Lcdo. Rafael R. Fuertes, incurrió en conducta impropia de un abogado cuando, al manifestar que actuaba en representación del Lcdo. Rafael Rodríguez Ema, requirió del Sr. Artemio Pedrosa que le pagase $42.00 como honorarios para el referido abogado quien—según manifestó el querellado—era el notario que iba a intervenir en el otorgamiento de la escritura que resultó ser la núm. 16 de 6 de noviembre de 1954 ante el querellado, cuando el Lcdo. Rafael Rodríguez Ema no iba a intervenir, ni intervino en el otorgamiento.'

"Con respecto a este cargo concluimos que de los dos mil dólares de contado entregados al Sr. Pedrosa, el Lic. Fuertes cobró y obtuvo cuarenta y dos ($42.00) dólares por los gastos de la escritura y sus honorarios como notario. Antes de ese día el Lic. Fuertes le había dicho al Sr. Pedrosa que los gastos de la escritura y los honorarios del Lic. R. Rodríguez Ema eran cuarenta y dos ($42.00) dólares. En el acto de la firma de la escritura y distribución del dinero no se aclaró para cuál de los dos notarios serían los honorarios.

'VIII. El querellado, cobró al Sr. Pedrosa intereses usurarios sobre un préstamo por la cantidad de $2,000, incurriendo así en el delito de usura, *misdemeanor*, (33 LPRA sec. 1751), y en conducta inmoral e impropia de un abogado.'

"En cuanto a este cargo nuestra conclusión es que la transacción culminó en que el Lic. Fuertes le prestó dos mil ($2,000) dólares al Sr. Pedrosa para que éste le pagara al año

y medio tres mil ($3,000) dólares y, si no pagaba el principal de tres mil dólares dentro de ese término de año y medio, el querellado recibiría, como recibió, intereses a razón del nueve por ciento anual desde que venciera el plazo de año y medio.

"Aun bajo la versión del querellado—que no hemos aceptado—surgiría que éste violó la política pública al cobrar por adelantado cuatrocientos cinco ($405.00) dólares sobre un supuesto préstamo de tres mil ($3,000) dólares. Según el querellado, él le entregó al Sr. Pedrosa dos mil quinientos noventa y cinco ($2,595) (¹) dólares para que éste pagará tres mil ($3,000) dólares al año y medio. El interés recibido por el querellado excedería el límite fijado de nueve ($9.00) dólares anuales por cada cien dólares, resultando un interés de 10.4%.

'IX. El querellado cobró al Sr. Pedrosa intereses usurarios sobre un préstamo por la cantidad de $300. incurriendo así en el delito de usura, *misdemeanor*, (33 LPRA, Sec. 1751) y en conducta inmoral e impropia de un abogado.'

"A nuestro entender los hechos pertinentes sobre este cargo son los siguientes:

"A los seis meses del préstamo reseñado en los cargos anteriores, el Sr. Pedrosa necesitó más dinero y volvió donde el Sr. Bernabé Martínez, con quien fue a la oficina del querellado. Allí convinieron en que el Lic. Fuertes le prestaría trescientos ($300.00) dólares al Sr. Pedrosa para que al año éste pagara cuatrocientos cincuenta ($450.00) dólares.

"El Sr. Martínez encargó al Lic. Guillermo Díaz Díaz para que preparara la escritura de tercera hipoteca, y el primero de junio de 1955 se otorgó la escritura núm. 9, Hipoteca Voluntaria en Garantía de Pagaré al Portador, ante dicho notario. En ese acto estaban presentes, además del notario, los esposos Pedrosa-Berríos y el Sr. Martínez solamente.

"Ese día el Sr. Martínez le entregó al Sr. Pedrosa trescientos ($300.00) dólares en efectivo y de esa cantidad el segundo le pagó al primero su comisión. Al día siguiente el corredor le pagó alrededor de veinticinco ($25.00) dólares al Lcdo. Díaz Díaz por los gastos y honorarios de la escritura.

"E. 19 de septiembre de ese mismo año se canceló mediante escritura el pagaré hipotecario al portador de cuatrocientos. cincuenta ($450.00) dólares. Ante el notario, Lic. César Montilla, sólo comparecieron los esposos Pedrosa-Berríos y el Sr. Martínez. Allí el Sr. Pedrosa le pagó a éste los cua-

trocientos cincuenta ($450.00) dólares y los intereses devengados según el pagaré hasta ese día, pero el Sr. Martínez no le dio recibo alguno.

"Con excepción del momento en que el Sr. Pedrosa y el Lic. Fuertes acordaron el préstamo, todos los trámites ulteriores fueron llevados a cabo por el Sr. Martínez y el Sr. Pedrosa,* sin la presencia del querellado."

El querellante, respecto a esas conclusiones, no hizo realmente objeción alguna. Se limitó a solicitar la eliminación de cierta oración por considerarla una conclusión de derecho, exponiendo, sin embargo, que la misma era innecesaria a los efectos de estimarse probado el cuarto cargo porque la evidencia ofrecida respecto al mismo era suficiente para comprobarlo.

Por su parte el querellado formuló nueve objeciones a las conclusiones del Comisionado Especial. La primera de ellas se refiere a que en la conclusión relativa a los primeros tres cargos se hizo constar que el año en que se había otorgado la escritura núm. 16, sobre hipoteca en garantía de pagaré al portador, había sido el año 1961, en vez del año 1954, y a que se había mencionado el año 1958 en el penúltimo párrafo relativo al sexto cargo cuando el año correcto era el 1959. El querellante aceptó la existencia de esos errores y se allanó a que se hicieran las enmiendas correspondientes, por lo que se ordena que se tengan por enmendadas esas fechas en la forma propuesta por el querellado en su primera objeción. Las demás objeciones se refieren a la apreciación que hizo el Comisionado Especial respecto a la prueba presentada por ambas partes y carecen de méritos suficientes para darlas como buenas.

Hemos leído detenidamente la transcripción de la extensa prueba oral y estudiado cuidadosamente la documental presentada por las partes y, a juicio nuestro, las conclusiones de hecho del Comisionado Especial están ampliamente sostenidas.

---

\* "(Escolio 1.) Menos doscientos dólares para el corredor y $42 para el notario."

por la prueba. Todos los cargos imputados al querellado fueron satisfactoriamente probados. *En vista de la naturaleza de esos cargos procede que al querellado se le separe del ejercicio de la profesión de abogado y notario en esta Isla, debiéndose dictar resolución a ese efecto.*

Los jueces Asociados Sres. Serrano Geyls y Blanco Lugo no intervinieron.