Fraticelli Torres, Jueza Ponente
TEXTO COMPLETO DE LA SENTENCIA
La peticionaria, Wanda I. Colón Angueira, nos solicita que revoquemos la resolución del Tribunal de Primera Instancia, Sala Superior de Bayamón (Hon. José R. Parés Martínez, J.), dictada el 14 de junio de 2004 en el caso de divorcio (DDI 2003-2179), mediante la cual denegó la descalificación, por conflicto de intereses, del abogado de su esposo, el aquí recurrido Femando J. Pont Romaguera.
La parte recurrida presentó su oposición al recurso oportunamente y alegó, en síntesis, que no ha representado a la parte peticionaria, ni a la sociedad de gananciales que tiene constituida con el recurrido, en ningún caso previo o simultáneo a la acción de divorcio y que la representación legal de la corporación y del recurrido, en un caso por daños y perjuicios, no representa conflicto alguno que sea perjudicial a la peticionaria.
Con el beneficio de la comparecencia de ambas partes, expedimos el recurso para resolver las cuestiones planteadas.
LEI 10 de marzo de 1989, la peticionaria, señora Colón Angueira, y el recurrido, señor Pont Romaguera, contrajeron matrimonio. El 21 de agosto de 2003, la señora Colón Angueira presentó una demanda de divorcio contra el señor Pont Romaguera. Luego de adelantados los trámites procesales, el 12 de marzo de 2004, la *1021 peticionaria solicitó la descalificación del licenciado Carlos R. Iguina Oharriz como abogado del señor Pont Romaguera en el caso de divorcio. En esa ocasión, la señora Colón Angueira alegó que existía un conflicto de intereses por representación simultánea adversa, ya que el licenciado Iguina Oharriz también representaba a F. Pont Flores Corporation y al propio señor Pont Romaguera, en su carácter personal, como demandados en el aludido caso por daños y perjuicios. Basó su solicitud de descalificación en que el abogado representa a la corporación F. Pont Flores Corporation, de la que ambos son accionistas, y a su esposo, quien es la parte adversa en el pleito de divorcio.
Al cuestionarse la titularidad de las acciones, la señora Colón Angueira argumentó que las acciones de la corporación, de la que es socio su marido, están cubiertas por la presunción de ganancialidad que establece el Artículo 1307 del Código Civil de Puerto Rico; por tanto, al ser ella parte de la sociedad legal de gananciales y al no haberse rebatido la presunción, el licenciado Iguina Oharriz también representa los intereses de ella al representar a la corporación en el caso por daños y perjuicios. Siendo así, el licenciado Iguina Oharriz defendía intereses contrarios a los de ella, como cliente, en el caso de divorcio.
El 12 de abril de 2004, el señor Pont Romaguera presentó su oposición a la solicitud de descalificación del licenciado Iguina Oharriz. Alegó el señor Pont Romaguera que las acciones de la corporación aludida eran privativas, carácter que surge del propio expediente y de la prueba que presentó en la vista en la que se discutió la moción de descalificación; que la señora Colón Angueira no es accionista de la corporación', y que, en el caso por daños y perjuicios, no figuraba como demandada la sociedad legal de gananciales constituida entre ellos. Por tanto, alegó el licenciado Iguina Oharriz, que él no representó los intereses de la señora Colón Angueira en ningún caso, ni su representación presente es, por ello, sucesiva (o simultánea) y adversa, en violación del Canon 21 de Etica Profesional, infra.
El señor Pont Romaguera anejó a su escrito de oposición, para sustentar sus alegaciones, una carta suscrita por el Presidente de F. Pont Flores Corporation, el señor Víctor Álvarez Pont, en la cual éste certificó que la señora Colón Angueira no era ni había sido nunca accionista de dicha corporación, y una carta suscrita por el contador público autorizado, el señor José Luis Mendoza, quien certificó que las acciones de la corporación son privativas del señor Pont Romaguera, ya que las había adquirido por donación de sus padres entre los años 1977 y 1982, es decir, previo a contraer matrimonio con la peticionaria.
Argumentó, además, en la alternativa, que, aun si el tribunal determinara que las acciones del señor Pont Romaguera eran bienes gananciales, la corporación constituia una entidad independiente de sus accionistas, así como la sociedad legal de gananciales constituia una entidad independiente de sus miembros, y ésta no fue demandada en la acción de daños y perjuicios dirigida a hechos imputados a la corporación. El señor Pont Romaguera solicitó que el tribunal le impusiera a la señora Colón Angueira el pago de honorarios de abogado, como sanción por traer una solicitud de descalificación que, a su juicio, “raya en la frivolidad y temeridad”.
El 5 de mayo de 2004, la señora Colón Angueira presentó un escrito titulado “Dúplica a Oposición Solicitando Descalificación”, en el cual reiteró sus argumentos con relación a la representación alegadamente conflictiva del licenciado Iguina Oharriz. Argumentó la señora Colón Angueira que la certificación, presentada en ventaja propia {self serving) por el contador público autorizado José Luis Mendoza, no podía entenderse como suficiente para derrotar la presunción de ganancialidad de las acciones corporativas, sobre todo, cuando dichas acciones aparecían incluidas en los estados financieros de la sociedad legal de gananciales preparados por el propio señor Mendoza. Añadió la señora Colón Angueira que existían documentos que evidenciaban que, en 1989, los socios originales de la corporación habían vendido las acciones a los socios actuales, entre ellos, el recurrido, y que dichas acciones todavía se estaban pagando durante la vigencia del matrimonio, ya que el monto de la deuda había sido garantizado con pagarés a plazo fijo.
El foro recurrido celebró una vista el 17 de mayo de 2004 para escuchar los argumentos de las partes en *1022 tomo a la solicitud de descalificación. El 14 de junio de 2004 emitió la resolución que denegó la solicitud presentada por la señora Colón Angueira. Entendió el tribunal que el licenciado Iguina Oharriz no había incurrido en un conflicto de intereses por representación simultánea adversa, toda vez que la referida corporación tenía una personalidad jurídica independiente de sus accionistas; que no obraba en los autos prueba suficiente que demostrara que la señora Colón Angueira fuera accionista de dicha corporación; en todo caso, ni el patrimonio de la señora Colón Angueira ni el de la sociedad legal de gananciales se vería afectado por el caso por daños y perjuicios; y que no se había presentado evidencia de que la señora Colón Angueira hubiera sido cliente del licenciado Iguina Oharriz. Por tales argumentos, rechazó la interpretación de la señora Colón Angueira de que el licenciado Iguina Oharriz estuviera representando a dos clientes cuyos intereses estuvieran en conflicto.
De dicha determinación recurre ante nos la señora Colón Angueira. En su escrito, la peticionaria alega que el Tribunal de Primera Instancia erró: (1) al concluir que no obraba en el expediente evidencia que demostrara que la señora Colón Angueira era accionista —cuando existía la presunción de ganancialidad, la cual no había sido rebatida por el señor Pont Romaguera— y al disponer del asunto mediante declaraciones en ventaja propia o “self serving”, sin celebrar vista evidenciaría; y (2) al declarar no ha lugar la moción de descalificación y resolver que el licenciado Iguina Oharriz no había incurrido en conflicto de intereses por representación simultánea o concurrente, a pesar de que éste representaba en un pleito por daños y perjuicios a una corporación de la cual la peticionaria era accionista.
El 9 de agosto de 2004, el señor Pont Romaguera comparece ante nos mediante su escrito de oposición a la petición de certiorari. Alega que “[e]l presente caso es uno meramente de divorcio, por lo que no tiene nada que ver en [e]sta etapa de los procedimientos la división de bienes de las partes....”. Reitera su afirmación de que las acciones corporativas en controversia son privativas y no gananciales, y de que la documentación presentada resulta suficiente para derrotar cualquier presunción de ganancialidad. Reitera los argumentos que levantó ante el Tribunal de Primera Instancia y argumenta, además, que la señora Colón Angueira no ha demostrado que hubiera sufrido algún perjuicio o desventaja por razón de que el licenciado Iguina Oharriz estuviera representando a la corporación y al señor Pont Romaguera en el caso de daños y perjuicios, y también al señor Pont Romaguera en el caso de divorcio.
Con la comparecencia de ambas partes, expedimos el auto para resolver las cuestiones planteadas.
II

A. La naturaleza de las acciones corporativas como criterio para establecer la representación simultánea de clientes en conflicto

La sociedad legal de gananciales en Puerto Rico tiene personalidad jurídica propia y separada de la de los cónyuges que la componen, aunque atenuada por su propia naturaleza, propósitos y dinámica intema. En términos de la titularidad del patrimonio que los cónyuges acumulen durante la vigencia del matrimonio, la sociedad de gananciales constituye una comunidad germánica o “en mano común” sobre todos los bienes adquiridos por cualquiera de ellos a título oneroso y a costa del caudal común. Esta doctrina fue reconocida expresamente por el Tribunal Supremo de Puerto Rico, luego de aprobada la reforma de 1976 a las normas contenidas en el Código Civil de Puerto Rico, edición de 1930, sobre el régimen económico matrimonial. Int’l Charter v. Registrador, 110 D.P.R. 862, 866, (1981); Pujol v. Gordon, res. el 3 de noviembre de 2003, 160 D.P.R. _(2003), 2003 J.T.S. 166, a la pág. 344.
A diferencia de la comunidad de bienes ordinaria o romana, en la pertenencia en mano común, cada comunero es dueño de todo, sin especial determinación de cuotas, por el carácter unitario del patrimonio conyugal, aunque debe soportar la división por mitad al momento de la disolución del matrimonio y de la posterior liquidación del haber común. Id. Jurisprudencia posterior a 1976, reitera la existencia de esa *1023 personalidad jurídica separada y distinta de los cónyuges que la originan, norma que tiene como consecuencia que su patrimonio, responsabilidades y derechos no se confunden con los de éstos. Reyes v. Cantera Ramos, Inc., 139 D.P.R. 925, 928 (1996); Int’l Charter Mortgage Corp v. Registrador, 110 D.P.R. a la pág. 866; García v. Montero Saldaña, 107 D.P.R. 319, 335 (1978).
Los artículos 1299 y 1301 del Código Civil, 31 L.P.R.A. sees. 3631 y 3641, determinan la naturaleza de los bienes que pueden coincidir en la economía conyugal sujeta al régimen de gananciales. De un lado, los bienes privativos o exclusivos de cada uno de los cónyuges; de otro, los que constituyen el patrimonio ganancial o común. Se reputan como propios o privativos por su origen, todos aquellos bienes o derechos, cualquiera que sea su clase y naturaleza, cuya titularidad de uno sólo de los cónyuges resulte anterior al matrimonio o exterior a la gestión económica de la sociedad matrimonial propiamente dicha. Los bienes que los sustituyan conservan su misma naturaleza, por medio del instituto de la subrogación real. Los bienes o derechos que se adquieran a título oneroso o a costa del caudal común o por subrogación de éstos, constante el matrimonio, se reputarán gananciales.
Los bienes privativos deben poderse identificar dentro de la masa de bienes de la sociedad legal de gananciales al momento de la liquidación; si no, se confunden en la masa común y se reputan gananciales. Cádiz v Jiménez, 27 D.P.R. 657 (1919).
Ante la claridad de las normas reseñadas, el Tribunal Supremo ha declarado reiteradamente que en materia de regímenes económicos matrimoniales, rige en Puerto Rico el axioma básico que establece que el patrimonio individual de cada cónyuge permanece separado del de la sociedad legal de gananciales. Pujol v. Gordon, 2003 J.T.S. 166, a la pág. 414. Ambas masas tienen sustantividad propia y diferenciada en la economía conyugal; por ello, para asegurar la integridad de las tres masas patrimoniales que coinciden bajo el régimen de gananciales, la doctrina ha adoptado la teoría del título o naturaleza de origen de los bienes que las conforman, “no importa los cambios, transformaciones o sustituciones que se operen en ellos’'’ durante la vigencia del matrimonio. Sucn Santaella v. Sec. de Hacienda, 96 D.P.R. 442, 446 (1968). 
Si no fuera por este juego normativo, “la identidad del patrimonio individual quedaría frustrada por las continuas transformaciones de los bienes en el flujo ordinario de las actividades económicas después del matrimonio. Este principio cobra mayor virtualidad en nuestra creciente economía industrial que estimula la inversión, la especulación, el crédito inmobiliario y otras actividades económicas." Sucn Santaella v. Sec. de Hacienda, 96 D.P.R. a la pág. 446; García v. Montero Saldaña, 107 D.P.R. a las págs. 335-336.
Ahora bien, como norma excepcional, por ser contraria al principio de la accesión natural, que destina el beneficio y la pérdida del bien a su propietario, el Artículo 1301(3) del Código civil clasifica también como bienes gananciales, los frutos, rentas o intereses percibidos o devengados durante el matrimonio, ya procedan de los bienes comunes o ya de los peculiares de cada uno de los cónyuges. 
En cuanto a la naturaleza de los bienes en controversia en el caso de autos, si la participación en las ganancias de una corporación se recibe en forma de pagos periódicos o separables de las acciones corporativas privativas originales, será ganancial por participar de la naturaleza de un fruto. López Martínez v. Yordán, 104 D.P.R. 594, 596-97 (1976). Por ello, las nuevas acciones, adquiridas durante el matrimonio con dinero o fondos gananciales o con dividendos percibidos de acciones privativas, son gananciales. Sucn. Santaella v. Secretario de Hacienda, 96 D.P.R. a la págs. 448-49; Alvarado v. Alemañy, res. el 28 de junio de 2002, 157 D.P.R. _ (2002); 2002 J.T.S. 98, a las págs. 1364-1365. Por lo dicho, las acciones o los dividendos corporativos pagados en nuevas acciones, porque no constituyen frutos, conservan su carácter privativo. 
La doctrina distingue la estimación económica original del bien y su aumento en valor por el transcurso del tiempo, por actos de su dueño o por actos de terceros. A base del mismo razonamiento, la plusvalía o *1024 incrementos ocurridos en el valor de las acciones corporativas, constante el matrimonio, por el mero transcurso del tiempo y por otras causas que no sean el esfuerzo de los cónyuges “o a costa del caudal común”, siempre es de naturaleza privativa, no sólo porque no cumple los criterios de los apartados (1) y (2) del artículo 1301, sino porque dicho aumento no participa del carácter de fruto, según descrito en el apartado (3) del mismo artículo. López Martínez v. Yordán, 104 D.P.R. a la pág. 596; Sucn. Santaella v. Secretario de Hacienda, 96 D.P.R. a la pág. 597.
Sin embargo, todos los bienes de los cónyuges, es decir, pertenecientes al marido, a la esposa o a ambos, “se reputan gananciales mientras no se pruebe que pertenecen privativamente al marido o a la mujer”. Art. 1307 del Código Civil, ed 1930, 31 L.P.R.A. sec. 3647.
La presunción establecida en el Artículo 1307 a favor del carácter ganancial de los bienes adquiridos durante el matrimonio, preceptúa una regla de carácter probatorio, a saber, una presunción controvertible que cede ante la verdadera naturaleza del bien. Esa presunción puede rebatirse con prueba fehaciente que demuestre de manera indubitada el carácter privativo de los fondos o bienes. Pujol v. Gordon, 2003 J.T.S. 166, a la pág. 345 y la extensa jurisprudencia allí citada. Dicha presunción “siempre cede a la verdad, esto es, a la prueba". García v. Montero Saldaña, 107 D.P.R. a las págs. 335-336; Santiago v. Tribl. de Contribuciones, 69 D.P.R. 305, 309 (1948); Robles Ostolaza v. U.P.R., 96 D.P.R. 583, 589 (1968). Véase, además, a Pauneto v. Núñez, 115 D.P.R. 591 (1984), y Cruz Viera v. Registrador, 118 D.P.R. 911 (1987).
Ahora bien, la norma de que la prueba para rebatir la presunción sea “completa y suficiente para desvanecerla” es más rigurosa cuando afecta a terceros que cuando surge de una controversia entre cónyuges. En estos casos desaparece la exigencia rigurosa de la prueba y basta que se “establezca circunstancialmente que los bienes han sido adquiridos mediante la inversión de bienes privativos sin necesidad de probar la procedencia exacta de los fondos”. Espéndez v. Vda. de Espéndez, 83 D.P.R. 437, 441-445 (1962); Echevarría Jiménez v. Sucn. Pérez Meri, 123 D.P.R. 664, 681 (1989); García v. Montero Saldaña, 107 D.P.R. a la pág. 335.
Junto a la presunción de ganancialidad y al instituto de la subrogación real, el Código Civil provee otros mecanismos de equilibrio que permiten distinguir y proteger el contenido de cada patrimonio durante la relación matrimonial, hasta el momento de su disolución y liquidación. Además de proteger el título original mientras el bien exista o sea sustituido por otro, el Código Civil permite el cómputo y la recuperación del valor de los desplazamientos que puedan producirse voluntaria o involuntariamente de una masa privativa a la ganancial o viceversa, mediante la teoría de los créditos y recompensas. Esta operación de contabilidad y equilibrio está regulada por los artículos 1316 a 1326 del Código Civil, 31 L.P.R.A. sees. 3691 a 3701, que regulan la liquidación de la sociedad legal de gananciales.
El Artículo 1317, 31 L.P.R.A. see. 3692, específicamente provee el mecanismo para restituir el desplazamiento de bienes de una masa a la otra, sin que ello cambie la naturaleza de origen de dichos bienes. Dispone:

“El inventario comprenderá numéricamente, para colacionarlas, las cantidades que habiendo sido pagadas por la sociedad de gananciales, deban rebajarse del capital del marido o de la mujer. También se traerá a colación el importe de las donaciones o enajenaciones que deban considerarse ilegales o fraudulentas, con sujeción al Artículo 1313 de este código. ”

Esta norma permite, dentro del marco legal que hemos descrito, que la sociedad recupere cualquier pago que haya hecho en beneficio de una masa privativa durante el matrimonio. Ello protege la titularidad original del bien y lo mantiene en la masa correspondiente, sin perjudicar al patrimonio que sufragó el gasto o realizó el pago que no le correspondía hacer en propiedad. Así, si un cónyuge o la sociedad destina fondos comunes para *1025 el pago de una deuda privativa, dicho acto no convierte al bien en ganancial, sólo da derecho a la restitución, vía reintegro, reembolso o recompensa, de la cuantía adelantada a favor del cónyuge propietario. Vélez Cordero v. Medina, 99 D.P.R. 113 (1970).
Al aplicar las normas descritas al caso de autos, tenemos que concluir que el señor Pont Romaguera, en la vista celebrada el 17 de mayo de 2004 para discutir la solicitud de descalificación, rebatió con prueba suficiente la premisa que sostenía el argumento principal de la peticionaria: la presunción de ganancialidad que rodeaba las acciones aludidas, al amparo del citado Artículo 1307. No está en duda que antes de casarse recibió acciones de sus padres a título gratuito.
La señora Colón Angueira nos plantea que existe una controversia sobre la naturaleza privativa o ganancial de las acciones de la corporación, porque, en su opinión, “los socios originales vendieron las acciones a los actuales y que dichas acciones aún se están pagando, ya que el pago de la deuda fue garantizado con pagarés a plazo fijo”. Con esas expresiones se quiso dar a entender, tanto ante el foro de primera instancia como ante nos, que “los socios actuales”, entre ellos su esposo, compraron más acciones en 1989 y todavía están pagando el préstamo tomado para su adquisición. Es decir, se quiso dar la impresión de que la sociedad de gananciales existente entre los litigantes de autos adquirió parte de esas nuevas acciones por un precio determinado que aún está al descubierto. Su apreciación de los hechos es incorrecta, aunque los documentos que describen esas transacciones, los que obran en el expediente, son claros y no se refieren a ninguna adquisición ganancial. El análisis de dichos documentos también es incorrecto. La incorrección de las premisas en las que la peticionaria basa su argumentación, la conduce a la conclusión errada de que las acciones son gananciales.
Un examen minucioso de los documentos a los que la peticionaria alude en su dúplica de 5 de mayo de 2004 ante el Tribunal de Primera Instancia, cuyos argumentos reafirma en la petición del recurso, demuestra que la alegada venta de acciones de 1989 fue realmente un negocio entre dos socios y la corporación como entidad jurídica. Se trató de la venta de acciones comunes ocurrida entre dos antiguos socios y la corporación, “con el propósito de que las mismas pasjaran] a ser acciones de tesorería”. (Contratos de compraventa de acciones de 30 de enero de 1989, Apéndice, págs. 53 a 67). Es decir, la venta se dio entre los socios y la corporación, no entre los antiguos socios y los socios actuales. Ese contrato tampoco dio titularidad alguna a su sociedad de gananciales sobre las acciones objeto de esa transacción, aunque ella y su esposo, como socio, en unión a otros socios y sus cónyuges, firmaran unos pagarés como garantizadores del pago del precio adeudado por la corporación a los socios vendedores. (Apéndice, págs. 53 a 67) Quien garantiza una obligación, no se convierte en propietario de la cosa que compra el deudor principal.
También firmaron los socios o accionistas, junto a sus cónyuges, un contrato que les obliga a vender sus acciones a la corporación en caso de muerte de alguno de ellos. Ante esa eventualidad, de que un socio actual muera, es de esperarse que los cónyuges firmen el acuerdo como sus causahabientes. Ello tampoco confiere carácter ganancial a las acciones. 
Si al momento de la liquidación la sociedad tuviera alguna cantidad de fondos comunes que reclamar al señor Pont Romaguera, para el pago de una deuda privativa, puede hacerlo al amparo del Artículo 1317, ya citado. Si en el caso de autos, la sociedad de gananciales abonó algún exceso en el precio o pagó, constante el matrimonio, el precio de una adquisición de naturaleza privativa, sólo tendría un crédito contra el cónyuge adquirente para recobrar la inversión hecha. Ello no le hace cotitular de los bienes del cónyuge que se benefició de tales expensas o gastos.
La peticionaria reclama la presunción de ganancialidad como la causa u origen de la titularidad de la sociedad de gananciales sobre dichas acciones, aunque también pretendió reclamar la titularidad de ellas por título oneroso, es decir, por la inversión de fondos gananciales. Ante esas alegaciones, procedía permitir al recurrido' rebatir la presunción y demostrar que las acciones eran privativas. La prueba presentada en la vista de *1026 17 de mayo de 2004 fue suficiente para rebatir, entre los cónyuges litigantes, la presunción de ganancialidad de las acciones privativas del recurrido Pont Romaguera. Entre los cónyuges, el quántum de la prueba para rebatir la presunción, como hemos señalado, es menor que cuando se actúa ante terceros. No siendo la sociedad de gananciales titular de dichos valores, tampoco lo era la peticionaria. Habiéndose rebatido dicha presunción, conforme a los criterios jurídicos descritos, tampoco le sirve ese argumento para reclamar la condición de accionista de la corporación y, por ende, de cliente del licenciado Iguina Oharris.
Por lo expresado, la conclusión del Tribunal de Primera Instancia de que “no obra en autos prueba suficiente que demuestre que la demandante, la señora Colón Angueira, es accionista de F. Pont Flores Corp.”, es correcta. El expediente está huérfano “de esa prueba”.

B. La descalificación del abogado porque hay apariencia de conflicto

Resuelto el asunto de la titularidad de las acciones corporativas, debemos resolver si la representación legal de un accionista de una corporación íntima, en un caso de daños contra la corporación, puede incidir significativa y adversamente en los intereses de la sociedad de gananciales del accionista o de su cónyuge, como para activar el conflicto o la apariencia de conflicto en el pleito de divorcio de ambos.
El tema que nos ocupa, la descalificación de un abogado por conflicto de intereses, está regulado por el Canon 21 del Código de Etica Profesional, 4 L.P.R.A. Ap. IX, C. 21. Este canon le impone esencialmente a iodo abogado y abogada, el deber de evitar las siguientes situaciones: (1) asumir la representación legal de una persona cuando a su juicio el ejercicio de dicha representación pueda verse afectado por sus expectativas o intereses personales; (2) aceptar la representación legal simultánea de dos clientes distintos con intereses contrapuestos; y (3) aceptar la representación de un cliente en asuntos que puedan afectar adversamente los intereses de un cliente anterior. Otaño v. Vélez, 141 D.P.R. 820, 826 (1996). Es decir, el Canon 21 prohíbe expresamente que el abogado incurra en una representación simultánea o sucesiva adversa. Liquilux Gas Corp. v. Berríos, Zaragoza, 138 D.P.R. 850, 859 (1995). Así se garantiza al cliente que la información personal y profesional que entregó a quien era su antiguo abogado, no se utilizará en su contra en el nuevo escenario en que ese mismo abogado tiene la representación de una parte antagónica en otro pleito, sea simultáneo o posterior. Otaño v. Vélez, 141 D.P.R., a la pág. 826. Conforme a ese mandato ético, un abogado queda impedido de asumir la representación simultánea o sucesiva de dos clientes, aun si éstos lo aprueban, cuando exista una relación sustancial entre ambas representaciones que implique intereses adversos. Otaño v. Vélez, 141 D.P.R. a la pág. 826; Liquilux Gas Corp. v. Berríos, Zaragoza, 138 D.P.R. a la pág. 859.
La obligación que impone el Canon 21 subsiste aún después de haber cesado las relaciones entre abogado y cliente. P.R. Fuels, Inc. v. Empire Gas Co., Inc., 133 D.P.R. 112, 118 (1993); Robles Sanabria, Ex parte, 133 D.P.R. 739, 745 (1993).
Al interpretar el Canon 21, el Tribunal Supremo ha dicho que el mismo “le impone al abogado un deber de lealtad completa que se divide en dos aspectos: ejercer un criterio profesional independiente y desligado de sus propios intereses; y no divulgar los secretos y confidencias que el cliente haya compartido durante el transcurso de sus representaciones pasadas y presentes”. Liquilux Gas Corp. v. Berrios, Zaragoza, 138 D.P.R., a la págs. 857-858; In re: Carreras Rovira y Suárez Zayas, 115 D.P.R. 778, 787 (1984); In re: Concepción Suárez, 111 D.P.R. 486 (1981).
En el ejercicio de su poder inherente de supervisar y controlar los procesos judiciales, incluida la conducta de los abogados que postulan ante ellos, los tribunales de primera instancia tienen autoridad para ordenar la descalificación de los abogados que participan en un caso. Meléndez v. Caribbean Int'l. News, res. el 29 de junio de 2000, 151 D.P.R. _ (2000), 2000 J.T.S. 108, pág. 1400; K-Mart Corp. v. Walgreens of P.R., Inc. 121 D.P.R. 633, 638 (1988). En los foros de primera y segunda instancia, la descalificación no constituye una acción *1027 disciplinaria, sino una medida preventiva para garantizar a todas las partes un trato justo y leal durante el desarrollo del proceso, sin ventajas de un litigante sobre otro. K-Mart Corp. v. Walgreens of P.R., Inc., a las págs. 637-638.
La norma establecida por el Tribunal Supremo para evaluar la presencia de conflicto por representación múltiple, es el criterio de relación sustancial. A tenor de este criterio, el cliente sólo tiene que demostrar que la controversia del pleito en el cual el abogado comparece en su contra está relacionada sustancialmente con la materia o causa de acción en la que tal abogado lo representa o lo representó. Otaño v. Vélez, a la pág. 827. El cliente no tiene que demostrar que ocurrió una violación al principio de confidencialidad. Sólo se le requiere que demuestre: (1) que entre él y el abogado que ahora representa a la parte contraria existió una relación previa de abogado-cliente; (2) que la representación anterior está sustancialmente relacionada con la representación actual de la parte contraria', y (3) que la presente relación resulta adversa a sus intereses. In re: Ortiz Martínez, res. el 6 de abril de 2004, _ D.P.R. _ (2004), 2004 J.T.S. 69, págs. 956-957; Eliane Exp. Ltd. v. Maderas Alfa, Inc., res. el 4 de abril de 2002, 156 D.P.R. _ (2002), 2002 J.T.S. 46, pág. 920; In re: Martínez Ramírez, 142 D.P.R. 329, 345 (1997); Otaño v. Vélez, a la pág. 827.
Entre otros factores a considerar para evaluar una situación de representación múltiple adversa, se destacan: (1) el grado en el cual los intereses de los clientes difieren; (2) la naturaleza de la representación; (3) la probabilidad de que el abogado sea influenciado por uno de los clientes; y (4) la extensión en que los intereses de los clientes puedan ser afectados de quedar influenciado el abogado. In re: Carreras Rovira y Suárez Zayas, a la pág. 790. En fin, el conflicto de intereses, por razón de representación múltiple, debe ser examinado a la luz del criterio de impropiedad, sin necesidad de que se aporte prueba de una violación ética como tal. Id., a la pág. 792.
Al evaluar la petición, los tribunales deben sopesar todos los intereses en conflicto sin soslayar el derecho que le asiste a un ciudadano de escoger libremente el abogado que lo represente. Sánchez Acevedo v. E.L.A., 125 D.P.R. 432, 438 (1990); In Re: Vélez, 103 D.P.R. 590, 599 (1975).
El Tribunal Supremo ha expresado, además, que para determinar la presencia de un posible conflicto de intereses en situaciones de representación sucesiva adversa, es indispensable tener en cuenta que el Canon 21 sanciona, no sólo la existencia de un conflicto real, sino que su carga disciplinaria se extiende a la apariencia de conflictos, es decir, a situaciones “que lleven consigo la semilla de un posible o potencial conflicto futuro”. Canon 38, 4 L.P.R.A. Ap. IX, C. 38; In re: Ortiz Martínez, a la pág. 957; In re: Carreras Rovira y Suárez Zayas, a las págs. 792. Puede haber situaciones que escapen a la reglamentación y en las que para evitar aun la apariencia de conducta impropia, el buen juicio aconseje la abstención. In re: Carreras Rovira y Suárez Zayas, a la pág. 785. Véase, además, Bermúdez & Longo, Inc. v. P.R. Casting Steel Corp., 114 D.P.R. 808 (1983). Cualquier duda debe ser adjudicada a favor de la descalificación. In re: Carreras Rovira y Suárez Zayas, a la pág. 787, nota 2.
Al aplicar los criterios reseñados, debemos concluir que el Tribunal de Primera Instancia no abusó de su discreción al denegar la solicitud de descalificación presentada por la peticionaria.
Al sopesar los intereses en conflicto en el caso de autos, según identificados por la doctrina del Tribunal Supremo, el análisis final no refleja la ocurrencia de perjuicio para la peticionaria, ni siquiera en apariencia. Ya vimos que la peticionaria no tiene legitimación activa para invocar la representación múltiple, porque no es ni fue cliente del abogado impugnado. El alegado conflicto, a base de la cotitularidad de las acciones de la corporación, no existe, porque dicha titularidad no fue probada. Es improbable que el licenciado Iguina Oharriz tome ventaja sobre la peticionaria en el pleito de divorcio, al cumplir sus obligaciones para con la corporación o con el señor Pont Romaguera en el caso de daños, por la naturaleza tan disímil de los pleitos.
*1028 El criterio de relación sustancial de los dos litigios contrapuestos ante el conflicto no se cumple en el caso de autos, como no se cumple el de la relación adversa contra una cliente previa o simultánea. En el primer caso, el de daños y perjuicios, los demandantes van contra la corporación y sus socios, su aseguradora, y contra los arrendadores financieros del auto que causó el accidente. La legitimación pasiva del señor Pont Romaguera en ese caso se diluye en el grupo de demandados, que están cubiertos por sus respectivas aseguradoras. En este caso, la peticionaria Colón Angueira demanda a su esposo en una acción de divorcio. La naturaleza de ambos pleitos es tan disímil, que la información que pueda recibir el licenciado Iguina Oharriz para atender el pleito de daños, poco puede afectar el desarrollo y conclusión del segundo, el de divorcio. Debemos concluir que, no existiendo conexión lógica o directa alguna entre ambos litigios, no se cumple el criterio de relación sustancial que active la sanción de la descalificación solicitada. Además, la descalificación en esta etapa del proceso ha de tener un efecto adverso en cuanto a la resolución justa, rápida y económica del caso. No hemos de considerar los otros factores que señala la jurisprudencia citada, porque no surge de los autos que la petición fue presentada con el propósito deliberado de retrasar los procesos o de hostigar a la otra parte, como se ha insinuado por el recurrido. Liquilux Gas Corp. v. Berrios Zaragoza, a las págs. 864-865; Fed. Pese. Playa Picúas v. U.S. Inds., Inc., 135 D.P.R. 303, 327 (1994); Otaño v. Vélez, a la pág. 828; Liquilux Gas Corp. v. Berrios, Zaragoza, a la pág. 864.
Por los fundamentos expuestos, se expide el auto, se confirma la resolución recurrida y se ordena la continuación de los procedimientos de conformidad con lo expresado en esta sentencia.
Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal.
Mildred Ivonne Rodríguez Rivera
Secretaria Interina del Tribunal de Apelaciones
ESCOLIOS 2005 DTA 42
1. Art. 1299. Son bienes propios de cada uno de los cónyuges:

“(1) Los que aporte al matrimonio como de su pertenencia.

(2) Los que adquiera durante él, por título lucrativo, sea por donación, legado, o herencia.

(3) Los adquiridos por derecho de retracto o por permuta con otros bienes, pertenecientes a uno sólo de los cónyuges.

(4) Los comprados con dinero exclusivo de la mujer o del marido. ”

2. Art. 1301. Son bienes gananciales:

“(1) Los adquiridos por título oneroso durante el matrimonio a costa del caudal común, bien se haga la adquisición para la comunidad, bien para uno sólo de los esposos.

(2) Los obtenidos por la industria, sueldo o trabajo de los cónyuges o de cualquiera de ellos.

(3) Los frutos, rentas o interés percibidos o devengados durante el matrimonio, procedentes de los bienes comunes o de los peculiares de cada uno de los cónyuges. ”

3. En esta ocasión se cita con aprobación a Manresa IX, Comentarios al Código Civil Español, 5ta. Ed. pág. 547; Scaevola XXII, Código Civil (1905), pág. 156; Castán, Derecho Civil Español Común y Foral, Tomo V, Vol. 1, 8a Ed. pág. 270; Borrell y Soler IV, Derecho Civil Español, 425 (1954); Puig Peña, Tratado de Derecho Civil Español, Tomo II, Vol. I, pág. 298.
*1029 4. Fruto es aquel producto derivado de la cosa principal, separable de la misma sin disminuirla y sin afectar su destino económico, que se percibe con relativa periodicidad.
5. Ha dicho el Tribunal Supremo:

“[U]na acción es un interés o cuota perteneciente al accionista individualmente en la propiedad de la corporación. Un dividendo en acciones es aquél que se paga en acciones reservadas o adicionales emitidas de la corporación, resultando en una conversión de ganancias en capital e implica continuación de la corporación con los mismos activos y pasivos. El propósito del dividendo en acciones es capitalizar ganancias para conservar o fortalecer el capital de operación. De modo que dicho dividendo nada toma de la propiedad de la corporación ni en forma alguna reduce sus activos, como tampoco nada suma al capital del accionista. Simplemente altera la forma de su inversión aumentando el número de sus acciones y en consecuencia disminuyendo el valor de cada acción, pero dejando substancialmente igual el valor total de sus acciones; pues si bien adquiere más acciones, cada una de éstas representa un interés fraccional menor que antes en el total de la propiedad corporativa, y su participación e interés proporcional en los activos de la corporación siguen siendo los mismos. ”

López Martínez v. Yordán, 104 D.P.R., a las págs. 596-597.
6. En palabras de la representación legal de la señora Colón Angueira, la controversia sobre la naturaleza privativa o ganancial de las acciones de la corporación se da porque, “admitiendo que Pont hubiese comprado las acciones, antes de casarse, lo que entendemos es incorrecto, la referida compra se hizo a precio aplazado”. En ¿poyo de su contención sostuvo que “los socios vendieron las acciones de la corporación y que dichas acciones aún se están pagando, ya que la deuda fue garantizada con pagarés a p[l]azo fijo”. (Enfasis en el original.) El análisis de los documentos que obran en el expediente no refleja que en 1989 ocurriera tal compra de acciones por Pont Romaguera ni por la sociedad de gananciales. Los pagarés aludidos reflejan con meridiana claridad que Pont Romaguera, al igual que otros socios, comparecen con su cónyuge como garantizadores del precio que debe la corporación a sus antiguos socios.
7. El estado financiero de los litigantes, al que alude la peticionaria en sus escritos, obrante en autos, no atribuye las acciones a la sociedad de gananciales, sino al señor Pont Romaguera. Las notas identificadas con las letras D y J de dicho informe describen la relación del recurrido con la corporación. La nota D explica que “[al] 31 de diciembre de 2000, el señor Pont Romaguera poseía una participación del 33.33% en F. Pont Flores Corporation”. La letra J describe su función en la entidad y la remuneración que recibe por sus servicios. La letra K reconoce que es garantizador de la línea de crédito de la corporación.
8. El abogado tiene para con su cliente un deber de lealtad completa. Este deber incluye la obligación de divulgar al cliente todas las circunstancias de sus relaciones con las partes y con terceras personas, y cualquier interés en la controversia que pudiera influir en el cliente al seleccionar su consejero. Ningún abogado debe aceptar una representación legal cuando su juicio profesional pueda ser afectado por sus intereses personales.
No es propio de un profesional el representar intereses encontrados. Dentro del significado de esta regla, un abogado representa intereses encontrados cuando, en beneficio de un cliente, es su deber abogar por aquéllo a que debe oponerse en cumplimiento de sus obligaciones para con otro cliente.
La obligación de representar al cliente con fidelidad incluye la de no divulgar sus secretos o confidencias y la de adoptar medidas adecuadas para evitar su divulgación. Un abogado no debe aceptar la representación de un cliente en asuntos que puedan afectar adversamente cualquier interés de otro cliente anterior ni servir como árbitro, especialmente cuando el cliente anterior le ha hecho confidencias que puedan afectar a uno u otro cliente, aun cuando ambos clientes así lo aprueban. Será altamente impropio de un abogado, el utilizar las confidencias o secretos de un cliente en perjuicio de éste.
Un abogado que representa a una corporación o sociedad le debe completa lealtad a la persona jurídica y no a sus socios, directores, empleados o accionistas, y solamente puede representar los intereses de dichas personas cuando los mismos no vengan en conflicto con los de la corporación o sociedad.
*1030 Cuando un abogado representa a un cliente por encomienda de otra persona o grupo, quien le paga al abogado por dicho servicio, debe renunciar la representación de ambos tan pronto surja una situación de conflicto de intereses entre la persona o grupo que le paga sus honorarios y la persona a quien representa. (Enfasis nuestro).